# Attachment 1

# PROVIDING EQUITABLE SERVICES TO STUDENTS AND TEACHERS IN NON-PUBLIC SCHOOLS UNDER THE CARES ACT PROGRAMS



**U.S. Department of Education**
**Washington, D.C. 20202**

**April 30, 2020**

**Purpose of this Document**

The purpose of this document is to provide information about equitable services for students and teachers in non-public schools under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Public Law 116-136, 134 Stat. 281 (Mar. 27, 2020). The CARES Act authorized the Education Stabilization Fund (ESF), which is a new appropriation of approximately $30.75 billion that creates funding streams for several distinct education programs that address the impact of the Novel Coronavirus Disease 2019 (COVID-19) on educational services across the Nation. Under these programs, the U.S. Department of Education (Department) will make awards to Governors, State educational agencies (SEAs), and institutions of higher education (IHEs) to help States to prevent, prepare for, and respond to the devastating effects of COVID-19. The provisions of the CARES Act relevant to the ESF and other Department programs are available on the Department's website at https://oese.ed.gov/offices/education-stabilization-fund/.

Two programs in the ESF require a local educational agency (LEA) that receives funds to provide equitable services to students and teachers in non-public schools:
- The Governor's Emergency Education Relief Fund (GEER Fund) totaling $2,953,230,000 (Section 18002 of the CARES Act).
- The Elementary and Secondary School Emergency Relief Fund (ESSER Fund) totaling $13,229,265,000 (Section 18003 of the CARES Act).

Other than statutory and regulatory requirements included in the document, such as those pursuant to the authorizing statute and other applicable laws and regulations, the contents of the guidance do not have the force and effect of law and are not meant to bind the public in any way. This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies. In addition, it does not create or confer any rights for or on any person.

The Department will provide additional or updated information as necessary on the Department's COVID-19 webpage: https://www.ed.gov/coronavirus. If you have questions that are not answered in this document, please e-mail COVID-19@ed.gov.

Table of Contents

1. Does the requirement to provide equitable services to students and teachers in non-public schools apply to any programs under the CARES Act? ..........................................1

2. What is a "non-public school" under the CARES Act programs?.................................1

3. Is a for-profit non-public school eligible to receive equitable services for its students and teachers under the CARES Act programs? ................................................................1

4. Which LEA is responsible for providing equitable services to non-public school students and teachers under the CARES Act programs? ....................................................1

5. Must an LEA or another public agency maintain control of CARES Act funds used to provide equitable services? ................................................................................................2

6. Who is responsible for initiating the consultation process and how should it begin? ...2

7. How does an LEA that receives funds under the CARES Act programs provide equitable services "in the same manner as provided under section 1117 of the ESEA"? .3

8. Must an LEA offer to provide equitable services under the CARES Act programs to students and teachers in all non-public schools located in the LEA, even if a non-public school has not previously participated in equitable services under Title I, Part A or Title VIII of the ESEA?...........................................................................................................5

9. Are all students and teachers in a non-public school eligible to receive equitable services under the CARES Act programs? .......................................................................5

10. How does an LEA determine the proportional share of funds that must be reserved to provide equitable services to non-public school students and teachers under the CARES Act programs?....................................................................................................................6

   A.  What is the base amount on which the proportional share is determined? .............6

   B.  What data does an LEA use to determine the proportional share?.........................6

   C.  How does an LEA calculate the proportional share? .............................................6

11. After an LEA has determined the proportional share of funds for equitable services under each CARES Act program, how does it then determine the amount of funds available for services to students and teachers in individual non-public schools? ............7

12. Do the requirements in 34 C.F.R. § 200.66 apply to equitable services under the CARES Act programs? ......................................................................................................7

13. Is a non-public school whose students and teachers receive equitable services under the CARES Act programs a "recipient of Federal financial assistance"?..........................8

14. What services and benefits under the CARES Act programs are available to non-public school students and teachers?..................................................................................8

# Providing Equitable Services to Students and Teachers in Non-Public Schools under the CARES Act Programs

**1. Does the requirement to provide equitable services to students and teachers in non-public schools apply to any programs under the CARES Act?**

Yes. The CARES Act establishes two new funds to which equitable services requirements apply. Specifically, a local educational agency (LEA) that receives funds under either the Governor's Emergency Education Relief Fund (GEER Fund) (section 18002 of the CARES Act) or the Elementary and Secondary School Emergency Relief Fund (ESSER Fund) (section 18003 of the CARES Act) ("CARES Act programs" for purposes of this document) to provide equitable services to students and teachers in non-public schools in the same manner as provided under section 1117 of the Elementary and Secondary Education Act of 1965 (ESEA). (Section 18005(a) of the CARES Act).

An institution of higher education or education-related entity that receives funds under the GEER Fund is not required to provide equitable services to students and teachers in non-public schools.

**2. What is a "non-public school" under the CARES Act programs?**

A "non-public school" means a non-public elementary or secondary school that (A) is accredited, licensed, or otherwise operates in accordance with State law; and (B) was in existence prior to the date of the qualifying emergency for the CARES Act programs. For purposes of this definition, the date of the qualifying emergency is March 13, 2020. (Section 18007(6) of the CARES Act).

**3. Is a for-profit non-public school eligible to receive equitable services for its students and teachers under the CARES Act programs?**

No. A for-profit non-public school is not eligible to receive equitable services for its students and teachers under the CARES Act programs. Section 18007(6) of the CARES Act defines a "non-public school" as a non-public elementary or secondary school. Section 18007(8) of the CARES Act incorporates the definitions in ESEA section 8101 for any terms not defined in the CARES Act. ESEA section 8101(19) and (45) defines "elementary school" and "secondary school," respectively, and specifies that they must be non-profit.

**4. Which LEA is responsible for providing equitable services to non-public school students and teachers under the CARES Act programs?**

The Department has determined that, under the CARES Act programs, the LEA in which a non-public school is located is responsible for providing equitable services to students and teachers in the school, as it is under most ESEA programs that require an LEA to provide equitable services. Outside of Title I, Part A, the responsibility typically falls on the LEA in which a non-public school is located because equitable services are generally available

1

to all students or teachers in the non-public school in the LEA and the LEA in which the school is located is closest and best able to meet the needs of students and teachers.

Title I, Part A of the ESEA is different; ESEA section 1117 sets forth a student residency requirement, rather than a school location requirement, for receipt of equitable services under Title I, Part A. Only low-achieving students who live in a participating Title I public school attendance area are eligible for services and, therefore, the LEA where students reside is responsible for providing equitable services. The CARES Act programs have no such residency requirement for eligibility for services. Rather, the CARES Act programs provide LEAs full discretion, unless funds are targeted for a specific purpose or population of public and non-public school students by the Governor under the GEER Fund or by an SEA through the SEA reserve under the ESSER Fund (see section 18003(e) of the CARES Act), to use CARES Act funds to provide educational services to students in public and non-public schools in the LEA through a broad range of allowable activities. Thus, providing equitable services with CARES Act funds is similar to other ESEA programs where equitable services are provided by the LEA in which a non-public school is located.

**5. Must an LEA or another public agency maintain control of CARES Act funds used to provide equitable services?**

Yes. Control of funds for services and assistance provided to non-public school students and teachers under the CARES Act programs, and title to materials, equipment and property purchased with such funds, must be in a public agency, and a public agency must administer such funds, materials, equipment, and property. In other words, no funds may go directly to a non-public school. In addition, services for non-public school students and teachers must be provided by a public agency directly or through contract with another public or private entity. (Section 18005(b) of the CARES Act).

**6. Who is responsible for initiating the consultation process and how should it begin?**

Similar to how an LEA provides equitable services under the ESEA, an LEA is responsible for initiating the consultation process. It must contact officials in all non-public schools in the LEA to notify them of the opportunity for their students and teachers to obtain equitable services under the CARES Act programs. Through this initial contact, the LEA can explain the services available under the CARES Act programs and how non-public school students and teachers can participate. If non-public school officials have not been contacted, they may contact the LEA or the State ombudsman to inquire about equitable services under the CARES Act programs.

If non-public school officials want equitable services for their students and teachers, the LEA must consult with those officials during the design and development of the LEA's programs and before the LEA makes any decision that affects the opportunity of non-public school students and teachers to participate in the activities funded under the CARES Act programs. If a non-public school declines to participate in the CARES Act programs or does not respond to an LEA's good-faith effort to make contact, the LEA has no further responsibility to provide equitable services to students or teachers in that school. The LEA, however, must be able to demonstrate that it made a good faith effort to contact all the non-public schools in the LEA.

**7. How does an LEA that receives funds under the CARES Act programs provide equitable services "in the same manner as provided under section 1117 of the ESEA"?**

An LEA that receives funds under the CARES Act programs must provide equitable services to students and teachers in a non-public school in the same manner as provided under section 1117 of the ESEA, as determined in consultation with representatives of non-public schools. (Section 18005(a) of the CARES Act). This requirement, on its face, necessitates that the Department interpret how the requirements of section 1117 apply to the CARES Act programs, given that an LEA under the CARES Act programs may serve all non-public school students and teachers without regard to family income, residency, or eligibility based on low achievement. Unless the requirements of section 1117 would limit equitable services under the CARES Act programs, we conclude they apply as outlined below.

We have interpreted "in the same manner as under section 1117" in light of the significantly broader eligibility and uses of funds authorized under the CARES Act as compared to Title I, Part A, reasonably reconciling differences. In doing so, we gave meaning to section 1117(a)(3), which requires educational services and other benefits for students in non-public schools to be equitable in comparison to those for public school students. The services that an LEA may provide under the CARES Act programs are clearly available to *all* public school students and teachers, not only low-achieving students and their teachers as under Title I, Part A. Similarly, there is no limitation on residence in a participating Title I public school attendance area for services provided in public schools under the CARES Act programs. For CARES Act services to be equitable in comparison to public school students and teachers, it follows that the same principles must apply in providing equitable services to non-public school students and teachers.

The following describes how the provisions of ESEA section 1117 apply, reconciled, when necessary, to meet the purposes of the CARES Act programs:

- 1117(a)(1) – Under Title I, Part A, an LEA must provide equitable services to low-achieving students as defined in ESEA section 1115(c) who reside in a participating Title I public school attendance area and attend a non-public school and their teachers. Under the CARES Act programs, an LEA may provide equitable services with CARES Act funds to any students and teachers in non-public schools, unless limited by a Governor under section 18002 of the CARES Act or an SEA through the SEA's reserve under section 18003(e) of the CARES Act. (See Questions #8 and #9).
- 1117(a)(2) – Under both Title I, Part A and the CARES Act programs, an LEA must provide equitable services and other benefits, including materials and equipment, that are secular, neutral, and nonideological.
- 1117(a)(3)(A) – Under both Title I, Part A and the CARES Act programs, an LEA must provide services and other benefits for non-public school students and teachers in a timely manner that are equitable in comparison to the services and benefits provided for public school students and teachers.

- 1117(a)(3)(B) – Under Title I, Part A, an SEA must designate an ombudsman to monitor and enforce the equitable services requirements. An SEA must use the ombudsman also to monitor and enforce the requirements of the CARES Act programs that an LEA provide equitable services to students and teachers in non-public schools.
- 1117(a)(4)(A) – Under both Title I, Part A and the CARES Act programs, an LEA must determine the proportional share available to provide equitable services to students and teachers in non-public schools based on the total amount of funds an LEA receives prior to any allowable expenditures or transfers. Under the CARES Act programs, the LEA calculates the proportional share based on the number of children enrolled in each non-public school whose students or teachers participate in the CARES Act programs compared to the number of students enrolled in public schools in the LEA. The LEA makes this determination under each CARES Act program separately. (See Question #10).
- 1117(a)(4)(B) – Under Title I, Part A, an LEA must obligate funds available for equitable services in the fiscal year for which the funds are received by the LEA. An LEA must obligate CARES Act funds for equitable services in the fiscal years for which those funds are intended for services to address the impact of COVID-19.
- 1117(a)(4)(C) – Under both Title I, Part A and the CARES Act programs, an SEA must provide notice in a timely manner to appropriate non-public school officials in the State of the allocation of funds for educational services and other benefits that each LEA has determined are available for non-public school students and teachers.
- 1117(b)(1) – Under both Title I, Part A and the CARES Act programs, an LEA must consult with appropriate non-public school officials during the design and development of the LEA's activities on relevant issues such as those contained in this section of Title I, Part A. The LEA and non-public school officials shall both have the goal of reaching agreement on how to provide equitable and effective services and the LEA must transmit the results of that agreement to the ombudsman.
- 1117(b)(2) – Under both Title I, Part A and the CARES Act programs, if an LEA disagrees with the views of non-public school officials during consultation, the LEA must provide in writing to the non-public school officials the reasons why the LEA disagrees.
- 1117(b)(3) – Under both Title I, Part A and the CARES Act programs, consultation must occur before an LEA makes any decision that affects the opportunities of non-public students and teachers to receive equitable services. Meetings between the LEA and non-public school officials need not occur in person if they cannot be conducted due to closed schools or social distancing rules. In this case, the Department recommends LEAs and non-public school officials consult remotely.
- 1117(b)(4) – Under both Title I, Part A and the CARES Act programs, consultation must include discussion of service delivery mechanisms an LEA may use to provide equitable services.
- 1117(b)(5) – Under both Title I, Part A and the CARES Act programs, an LEA must maintain and provide to the SEA written affirmation signed by non-public

4

- school officials that timely and meaningful consultation has occurred and, if non-public school officials do not provide such affirmation, the LEA must forward to the SEA the documentation that such consultation has, or attempts at such consultation have, taken place.
- 1117(b)(6) – Under both Title I, Part A and the CARES Act programs, non-public school officials have a right to file a complaint with the SEA; the SEA must provide services directly or through contracts if requested to do so by non-public school officials and the SEA determines that the LEA did not meet applicable requirements.
- 1117(c)(1) – Under Title I, Part A, to determine the proportional share, an LEA must calculate the number of children, ages 5 through 17, who are from low-income families and reside in a participating Title I public school attendance area. Because an LEA determines the proportional share based on enrollment in public and non-public schools under the CARES Act programs, the LEA need not collect poverty data from non-public schools (see Question #10 for information on determining the proportional share of CARES Act funds the LEA must reserve to provide equitable services to non-public school students and teachers).
- 1117(c)(2) – Under Title I, Part A, non-public school officials may file a complaint with the SEA if they dispute the count of children from low-income families. Because an LEA need not collect poverty data to determine the proportional share available for equitable services under the CARES Act programs, there would be no reason for non-public school officials to file a complaint regarding poverty data with the SEA.
- 1117(d) – Under Title I, Part A, control of funds and title to materials, equipment, and property must be in public agency. With respect to the CARES Act programs, this provision is superseded by section 18005(b) of the CARES Act, which also requires public control of funds. (See Question #5).

**8. Must an LEA offer to provide equitable services under the CARES Act programs to students and teachers in all non-public schools located in the LEA, even if a non-public school has not previously participated in equitable services under Title I, Part A or Title VIII of the ESEA?**

Yes. An LEA must offer to provide equitable services under the CARES Act programs to students and teachers in all non-public schools located in the LEA, even if a non-public school has not previously participated under Title I, Part A or Title VIII of the ESEA.

**9. Are all students and teachers in a non-public school eligible to receive equitable services under the CARES Act programs?**

Yes. All students and teachers in a non-public school are eligible to receive equitable services under the CARES Act programs, unless a Governor (under the GEER Fund) or an SEA (through the SEA reserve under the ESSER Fund) targets funds for a specific purpose or population of public and non-public school students. Unlike Title I, Part A, equitable services under the CARES Act programs are not based on residence in a participating Title

public school attendance area and are also not limited only to low-achieving students and their teachers.

**10. How does an LEA determine the proportional share of funds that must be reserved to provide equitable services to non-public school students and teachers under the CARES Act programs?**

   A.  **What is the base amount on which the proportional share is determined?**

   Under ESEA section 1117(a)(4)(A)(ii), an LEA must determine the proportional share available for equitable services from the total amount of Title I, Part A funds it receives prior to reserving funds for allowable expenditures such as administrative costs or districtwide expenditures, and before making allocations to participating public schools. Because section 18005(a) of the CARES Act requires an LEA to provide equitable services under the CARES Act programs "in the same manner as provided under section 1117," an LEA must use the total allocation it receives under each CARES Act program to determine the proportional share available for equitable services before reserving funds for other purposes.

   B.  **What data does an LEA use to determine the proportional share?**

   An LEA uses enrollment data in non-public schools whose students and teachers will participate under the CARES Act programs compared to enrollment in public schools in the LEA to determine the proportional share. Under the CARES Act programs, services are available for all students—public and non-public—without regard to poverty, low achievement, or residence in a participating Title I public school attendance area. An LEA that receives CARES Act funds uses those funds to provide educational services to students in both public and non-public schools through a broad range of allowable activities. Using enrollment to determine the proportional share from which to provide equitable services will contribute to the equitable treatment of children and teachers within the statutory universe of permissible uses for CARES Act dollars by allowing all students and teachers in a non-public school to receive services that are equitable compared to those available to all public school students and teachers. (See ESEA section 1117(a)(3)).

   C.  **How does an LEA calculate the proportional share?**

   To calculate the proportional share for equitable services under the CARES Act programs, an LEA determines the overall number of children who are enrolled in public schools and non-public schools in the LEA that wish to participate under one or both CARES Act programs. Using the proportion of students who are enrolled in participating non-public schools, the LEA determines the amount of funds available for equitable services based on that proportional share of the LEA's total allocation under each CARES Act program separately. For example, an LEA receiving $100,000 under the GEER Fund and $900,000 under the ESSER Fund, and with 1,350 public school students and 150 non-public school students, would determine the proportional share as follows:

| EXAMPLE – DETERMINING THE PROPORTIONAL SHARE | | | |
|---|---:|---:|---:|
| | **Public** | **Non-Public*** | **Total** |
| Enrollment | 1,350 | 150 | 1,500 |
| Proportion | 90% | 10% | 100% |
| Proportional Share GEER Fund | $90,000 | $10,000 | $100,000 |
| Proportional Share ESSER Fund | $810,000 | $90,000 | $900,000 |

*Non-public schools participating under the CARES Act programs.

**11. After an LEA has determined the proportional share of funds for equitable services under each CARES Act program, how does it then determine the amount of funds available for services to students and teachers in individual non-public schools?**

For consultation purposes, in order to determine what equitable services to provide to students and teachers in a given non-public school, an LEA, after reserving funds that are reasonable and necessary for administering equitable services under the CARES Act programs, would divide the remainder of the proportional share of funds available for equitable services by the total enrollment in non-public schools whose students and teachers will participate in each of the CARES Act programs to obtain a per-pupil amount. The LEA would then multiply that per-pupil amount by the enrollment in an individual non-public school to determine the amount of services the LEA can provide to students and teachers in that school. With agreement between the LEA and appropriate non-public school officials, the LEA may pool funds among a group of non-public schools and provide equitable services to students and teachers in non-public schools within the pool based on need without regard to how the funds were generated. (See ESEA section 1117(b)(1)(J)(i)).

**12. Do the requirements in 34 C.F.R. § 200.66 apply to equitable services under the CARES Act programs?**

No. The requirements in 34 C.F.R. § 200.66 do not apply to equitable services under the CARES Act programs. 34 C.F.R. § 200.66 is a Title I, Part A regulation that requires an LEA to provide Title I, Part A services that (1) supplement, and in no case supplant, the services that would, in the absence of Title I, Part A services, be available to participating non-public school students; and (2) only meet the needs of participating non-public school students and not the needs of the non-public school or the general needs of children in the non-public school. These provisions are necessary in the Title I, Part A context because equitable services must be supplemental to what non-public students otherwise receive and may only be provided to low-achieving students who reside in a participating Title I public school attendance area and attend a non-public school.

Equitable services under the CARES Act programs are much broader than under Title I, Part A. Equitable services under the CARES Act programs, by definition, may benefit a non-public school, such as purchasing supplies to sanitize and clean the facility, or all students in a non-public school, such as any activity authorized under the ESEA. Unlike Title I, they are not based on residence in a participating Title I public school attendance

7

area or limited only to low-achieving students. Moreover, the CARES Act does not have a supplement not supplant requirement.

### 13. Is a non-public school whose students and teachers receive equitable services under the CARES Act programs a "recipient of Federal financial assistance"?

No. A non-public school whose students and teachers receive equitable services under the CARES Act programs is not a "recipient of Federal financial assistance." A public agency must control and administer the CARES Act funds; in other words, no funds may go directly to a non-public school. (See Question #5). Thus, a non-public school is not a recipient of Federal financial assistance by virtue of its students and teachers receiving equitable services from an LEA under a CARES Act program. As a result, certain Federal requirements that apply to a recipient of Federal financial assistance are not directly applicable to a non-public school whose students or teachers receive equitable services under the CARES Act programs, unless the school otherwise receives Federal financial assistance for other purposes.

### 14. What services and benefits under the CARES Act programs are available to non-public school students and teachers?

In general, the services and benefits available to non-public school students and teachers are the same as those available to public school students and teachers. Specifically, the ESSER funds that flow to LEAs by formula may be used for a broad range of allowable activities. (See section 18003(d) of the CARES Act). The ESSER funds that an SEA may reserve for State purposes may also be used for a broad range of activities to address issues responding to COVID-19, unless the SEA decides to target them for a specific purpose or population of public and non-public school students. For example, an SEA could target the SEA reserve to provide technology to support distance learning for public and non-public school students from low-income families. (See section 18003(e) of the CARES Act). Similarly, a Governor may target GEER funds that it makes available to an LEA for a specific purpose or population of public and non-public school students. (See section 18002(c)(1) or (3) of the CARES Act).

In sum, equitable services permitted under sections 18002(c)(1) or (3), as applicable, and 18003(d) of the CARES Act must be available to best meet the needs of non-public school students and teachers, as determined through timely and meaningful consultation and consistent with any specific purposes established by a Governor under the GEER Fund or SEA through the SEA reserve under the ESSER Fund, regardless of the specific uses determined by the LEA to meet its own students' and teachers' particular needs.

As noted in Question #5, the control of any services or assistance provided to students and teachers in a non-public school, and title to materials, equipment, and property purchased with CARES Act funds, must be in a public agency and a public agency must administer those funds, materials, equipment, and property. A public entity must provide those services either directly or through a contract with a public or private entity.