# Attachment 2

May 5, 2020

Secretary Betsy DeVos
Secretary of Education
United States Department of Education
400 Maryland Avenue, SW
Washington, D.C. 20202

Dear Secretary DeVos:

On behalf of state education leaders across the country, I respectfully request that the U.S. Department of Education (USED or the Department) clarify information published on April 30, 2020, "Providing Equitable Services to Students and Teachers under the Coronavirus Aid, Relief, and Economic Security (CARES) Act Programs." The information provided is counter to the CARES Act statute and the Department's longstanding interpretations of the Elementary and Secondary Education Act of 1965 (ESEA), and could significantly harm the vulnerable students who were intended to benefit the most from the critical federal COVID-19 education relief funds Congress has provided.

Under the CARES Act's Elementary and Secondary School Emergency Relief Fund (ESSERF), the Department must allocate approximately $13.23 billion in federal funds to state and local educational agencies (SEAs and LEAs) on the basis of their relative shares of funding under Title I, Part A of ESEA in the prior fiscal year. Title I, Part A funding is calculated based on the number and concentrations of low-income students in public school district attendance areas across the country, whether these students are enrolled in public or non-public schools. To ensure that students in non-public schools are also appropriately served by ESSERF, Congress required any LEA that receives funds under ESSERF to provide equitable services to students and teachers in non-public schools "in the same manner as provided under section 1117 of the Elementary and Secondary Education Act of 1965." (Section 18005(a) of the CARES Act.)

Normally, under Section 1117 of ESEA, as interpreted by USED consistently over decades and as recently as October 2019, the LEA calculates the required equitable participation of non-public schools based on the number of low-income children in each participating non-public school in the LEA. Because low-income students attending non-public schools also helped to generate the LEA's allocation of Title I, Part A funding, as described above, it is equitable that the schools they attend participate in this manner. It also is consistent with Congress's longstanding priority under ESEA and other major federal K-12 programs to provide funding primarily to students who are most disadvantaged and require supplemental federal supports to access educational opportunities.

In the CARES Act, Congress required USED to use the same Title I, Part A formula for allocating ESSERF funds and the same provisions regarding serving non-public schools for the same reasons: it intended to concentrate ESSER funds in areas of the most need, where the educational and social impacts of the COVID crisis will be most extreme and difficult to overcome with limited local funds. Congress intentionally excluded LEAs that did not participate in Title I, Part A last year from ESSERF formula funding to LEAs (though they may

be eligible for other CARES funds) because it intended to concentrate ESSERF funds on poverty and its harmful impacts in overcoming the COVID crisis.

Information provided by the Department on April 30, 2020, contravenes this intent by basing the non-public share on total enrollments rather than on the number of *low-income children* living in the LEA and attending non-public schools, as LEAs do every year under Section 1117 and are expressly required to do under the CARES Act statute. The effect would be that non-public schools would receive an inequitable amount of funding, much more federal support than Congress intended, or LEAs anticipated based upon the CARES statute. In Louisiana, for example, non-public schools would receive at least 267% more funding under the Department's suggested approach than they would if USED were to interpret equitable services as required under CARES. In Orleans Parish, Louisiana, at least 77% of its CARES formula allocation would be directed to non-public schools in the area.

We urge the Department to clarify the information published on April 30, 2020 and advise LEAs to look at the percentage of FY2019 Title I funds they set aside for equitable services and apply that percentage to the ESSERF funds. For example, if an LEA set aside 5% of its FY2019 funds for equitable services, it would set aside 5% of its ESSER funds for equitable services. This interpretation is consistent with the CARES Act and ESEA, and it will ensure that disadvantaged students receive the critical relief Congress intended.

CCSSO and its members appreciate your immediate attention to this matter. USED has been an important partner throughout this unprecedented crisis to ensure states have the resources and flexibility necessary to serve the students in their state. We look forward to working with you to clarify this information to serve the students who need it most. If you have any questions, please do not hesitate to reach out.

Sincerely,

Carissa Moffat Miller
Executive Director
Council of Chief State School Officers