# Attachment 3

# Congress of the United States
## Washington, D.C. 20515

May 20, 2020

The Honorable Betsy DeVos
Secretary
U.S. Department of Education
400 Maryland Avenue, SW
Washington, D.C.  20202

Dear Secretary DeVos:

We write regarding the April 30, 2020 guidance issued by the U.S. Department of Education (Department) that seeks to repurpose hundreds-of-millions of taxpayer dollars intended for public school students to provide services for private school students, in contravention of both the plain reading of the statute and the intent of Congress.  The Coronavirus Aid, Relief, and Economic Security Act (CARES Act), requires local educational agencies (LEA) receiving funds to use a portion of such funds to provide services to low-income students attending private schools that are equitable to services provided to students in public schools in the same manner as under section 1117 of Title I of the Elementary and Secondary Education Act (ESEA).  However, the Department broke with statutory requirements of the CARES Act and longstanding precedent of the equitable services provision in section 1117 of ESEA by issuing guidance that directs LEAs to use emergency relief funds for the provision of services to students at private schools regardless of their wealth or residence.  This action also contradicts the Department's equitable services non-regulatory guidance issued on October 7, 2019.[1]  We ask that you immediately revise your April 30 guidance, including Question 10 of the guidance document, to conform with section 1117 of ESEA as required by the CARES Act.

The Department's new policy will direct districts to allocate additional resources and services to wealthier private school students, thereby leaving a smaller amount of funds available to serve public school students.  In fact, the Department recently clarified that its redefinition of the equitable services provision was designed to provide more money for equitable services than is required to be provided for such services under section 1117 of ESEA, with a spokesperson claiming that "only providing money for low-income private school students would place private school teachers and students at an unfair disadvantage."[2]  Given that the guidance contradicts the clear requirements of the CARES Act, it will cause confusion among States and LEAs that will be uncertain of how to comply with both the Department's guidance and the plain language of the CARES Act.[3]

**The CARES Act requires LEAs to use emergency relief funds to provide equitable services based only on the number of low-income students at private schools.[4]**

The CARES Act provides over $13 billion in K-12 education aid, which goes to states and LEAs based on their Title I, Part A (Title I-A) funding allocation.  Since 1965, Title I-A has served as a vital source of support for

---

[2] Rebecca Kleln, *Betsy DeVos Makes Moves to Quietly Prop Up Private Schools,* HuffPost, May 7, 2020, https://www.huffpost.com/entry/betsy-devos-school-privatization_n_5eb3335ac5b6526942a16176.
[3] The Elementary and Secondary Education Act of 1965, as amended, § 1115(c), 20 U.S.C. § 6315(c).
[4] *See generally* U.S. Department of Education, *Title I, Part A of the Elementary and Secondary Education Act of 1965, as Amended by the Every Student Succeeds Act: Providing Equitable Services to Eligible Private School Children, Teachers, and Families Updated Non-Regulatory Guidance* (October 7, 2019).

The Honorable Betsy DeVos
May 20, 2020
Page 2

disadvantaged students in schools with high concentrations of students from low-income families. A LEA's Title I-A allocation is determined by a variety of factors, primarily the number and concentration of low-income students within the LEA. Under ESEA section 1117, LEAs must set aside a share of their Title I-A funds to serve disadvantaged students attending private schools. The amount of the set aside is based on the number of low-income students attending private schools who reside in participating school attendance areas within the LEA attendance area.[5]

In this context, Congress required any LEA receiving emergency coronavirus relief funds under sections 18002 and 18003 of the CARES Act[6] to provide equitable services "in the same manner as provided under section 1117 of the Elementary and Secondary Education Act of 1965."[7] The statutory language and Congressional intent is clear: LEAs should use these emergency relief funds to provide equitable services *only* based on the number of low-income students attending private schools in their LEA, not all students attending private schools in the LEA.[8] However, on April 30, the Department issued an interpretation of this requirement that, if implemented, would require LEAs to provide equitable services based on the number of all private school students, regardless of their families' income level. This interpretation expands the amount of funding that LEAs must dedicate to providing equitable services to private school students, reduces public school students' share of funds, defies Congressional intent, and conflicts with the statutory requirements of the CARES Act.

**The Department's CARES Act Equitable Services guidance reinterprets ESEA diverting essential coronavirus relief funds away from public school students to private school students.**

Despite the clear direction from the CARES Act that LEAs must "provide equitable services in the same manner as provided under section 1117 of the ESEA," and the consistent interpretation of this section across decades and administrations,[9] the Department issued guidance re-interpreting equitable services under section 1117, solely as applied to the CARES Act. Simply put, the Department is directing LEAs to provide equitable services in a *different* manner from that provided under section 1117 of ESEA, in direct contravention of the plain text of the CARES Act.

For context, there are two "equitable services" provisions in ESEA, section 1117, referenced in the CARES Act, and section 8501, absent from the CARES Act. Section 1117 directs LEAs to provide equitable services only based on the number of low-income students, residing in eligible school attendance areas within the LEA, who attend private schools.[10] Section 8501 directs LEAs to provide equitable services to **all** eligible private school students in various programs.[11] Congress included the section 1117 reference of ESEA, located within Title I of ESEA, because the majority of K-12 funding allocated under the CARES Act is allocated via the Title I formula. By referencing section 1117, Congress explicitly and clearly directed LEAs to only provide equitable services based on the number of low-income students, **not** all eligible private school students, as would have been required had the CARES Act referenced section 8501. However, the Department's guidance for CARES

---

[5] The Elementary and Secondary Education Act of 1965, as amended, § 1117(a)(4)(A)(i), 20 U.S.C. § 6320(a)(4)(A)(i)).
[6] This provision applied to both Governor's Emergency Education Relief Funds as well as Elementary and Secondary School Emergency Relief Funds. Section 18005.
[7] The Coronavirus Aid, Relief, and Economic Security Act, § 18005(a).
[8] *Id.*
[9] *See, e.g.,* U.S. Department of Education, *Ensuring Equitable Services to Private School Children: A Title I Resource Tool Kit* (Sept. 2006).
[10] *See* U.S. Department of Education, *Title I, Part A of the Elementary and Secondary Education Act of 1965, as Amended by the Every Student Succeeds Act: Providing Equitable Services to Eligible Private School Children, Teachers, and Families Updated Non-Regulatory Guidance*, page 19-20 (October 7, 2019).
[11] The Elementary and Secondary Education Act of 1965, as amended, § 8501(b), 20 U.S.C. 7881(b).

The Honorable Betsy DeVos
May 20, 2020
Page 3

Act equitable services chooses to ignore this explicit direction from Congress and instead directs LEAs to provide equitable services[12] based on the enrollment of "all students—public and non-public—without regard to poverty, low achievement, or residence in a participating Title I public school attendance area," thus drastically inflating the amount of CARES Act funds that Congress required to be provided to equitable services.

According to America's school boards, superintendents, principals, teachers, and other stakeholders, the Department's guidance will ensure that "wealthy children in private schools are… used to generate the equitable services share of [CARES Act funding] for their private schools at the direct expense of low-income children remaining in public schools."[13]  Similarly, the Council of Chief State School Officers (CCSSO) told the Department that this guidance "could significantly harm the vulnerable students who were intended to benefit the most from the critical federal COVID-19 education relief funds Congress has provided."[14]

For example, if states follow this unauthorized guidance, Louisiana projects that it will spend more than 10 percent of its $286 million allocation in Elementary and Secondary School Emergency Relief Funds on students attending private schools.[15]  According to CCSSO, this is 267 percent more than it would have directed to private school students under the Department's longstanding interpretation of equitable services in section 1117 of ESEA, as explicitly required by the CARES Act.[16]  In total, Louisiana would spend $23 million on equitable services for private school students under the Department's new guidance, depriving public school students, including low-income students in public schools, of $14.4 million.

Similarly, Pennsylvania estimated that the Department's guidance "would roughly double Equitable Services reservations… [and] would impact districts of every type—large urban, small urban, suburban, and rural."  In one Pennsylvania district the Department's guidance would amount to an increase of more than 4000 percent "in support flowing from most disadvantaged to more advantaged students."  The Pennsylvania Secretary of Education referred to these outcomes as "clearly inequitable."[17]

We ask you immediately revise your April 30 guidance, including Question 10 of the guidance document to come into compliance with the CARES Act and section 1117 of ESEA. Further, it is imperative that the Department provide transparency about its interpretation of the equitable services provision and its inconsistency with long-standing requirements related to equitable services.  To that end, we request the Department please provide the following no later than June 3, 2020.

1) All internal Department communications regarding the interpretation of section 18005 of the CARES Act.
2) All communications between the Department and non-Department entities regarding the interpretation of section 18005 of the CARES Act.

---

[12] *See* U.S. Department of Education, Providing Equitable Services to Students and Teachers in Non-Public Schools Under the CARES Act Programs, page 4-6 (Apr. 30, 2020).
[13] The School Superintendents Association et al, Letter to Secretary DeVos (May 5, 2020).
[14] The Council of Chief State School Officers, Letter to Secretary DeVos (May 5, 2020).
[15] *See* Enclosure 1, State of Louisiana Department of Education, *Louisiana CARES Equitable Share Estimates.*
[16] The Council of Chief State School Officers, Letter to Secretary DeVos (May 5, 2020).
[17] Pedro A. Rivera, Pennsylvania Secretary of Education, Letter to Assistant Secretary for Elementary and Secondary Education, Frank T. Brogan (May 7, 2020) available at http://blogs.edweek.org/edweek/campaign-k-12/Letter%20to%20Secretary%20Brogan%20%282%29.pdf.

The Honorable Betsy DeVos
May 20, 2020
Page 4

3) The name and number of states and LEAs that have requested information regarding the Department's interpretation of section of the CARES Act.
4) All requests made to the Department to revise, reinterpret, or otherwise reconsider its April 30, 2020 CARES Act equitable services guidance, including the names of the requesting individuals, organizations, or entities.
5) The amount of funds from the Education Stabilization Fund that would be allocated to equitable services for students attending non-public schools under the Department's October 7, 2019 equitable services guidance and the amount of funds from the Education Stabilization Fund that would be allocated to equitable services for students attending non-public schools under the Department's April 30, 2020 CARES Act equitable services guidance.

Please send all official information relating to this request to Tylease Fitzgerald, Majority Chief Clerk for the House Committee on Education and Labor, Amanda Beaumont, Minority Staff for the Senate Committee on Health, Education, Labor, and Pensions, Philip Tizzani, Majority Staff for the House Appropriations Subcommittee on Labor, Health and Human Services, Education, and Related Agencies, and Mark Laisch, Minority Staff for the Senate Appropriations Subcommittee on Labor, Health and Human Services, and Education, and Related Agencies.

Sincerely,

**ROBERT C. "BOBBY" SCOTT**
Chair
Committee on Education and Labor
U.S. House of Representatives

**ROSA L. DELAURO**
Chair
Committee on Appropriations
Subcommittee on Labor, Health, Human
   Services, and Related Agencies
U.S. House of Representatives

**PATTY MURRAY**
Ranking Member
Committee on Health, Education, Labor and
   Pensions
U.S. Senate

Ranking Member
Subcommittee on Labor, Health and Human
   Services, Education, and RelatedAgencies
Committee on Appropriations
U.S. Senate.