# Attachment 7



THE SECRETARY OF EDUCATION

WASHINGTON, DC 20202

May 22, 2020

Ms. Carissa Moffat Miller
Executive Director
Council of Chief State School Officers
One Massachusetts Ave, NW, Suite 700
Washington, DC  20001

Dear Ms. Miller:

Thank you for your May 5, 2020, letter on behalf of state education leaders from across the country, in which you challenged the U.S. Department of Education's (the Department's) non-regulatory guidance concerning equitable services under the Coronavirus Aid, Relief, and Economic Security (CARES) Act.

The Department disagrees with your interpretation of the law, but we appreciate that some of your constituents have a sincere difference of opinion.  As a result, we will be issuing a rule on the topic in the next few weeks and inviting public comments.  We trust that process will resolve any issues in plenty of time for the next school year.

In the meantime, the Department's guidance document (*Providing Equitable Services to Students and Teachers under the CARES Act Programs,* published April 30, 2020) will remain in effect and inform our enforcement of the CARES Act.  Please let your members know that, consistent with the law, they should be ensuring that local educational agencies (LEAs) are holding meaningful consultation with nonpublic school representatives.  If they or their district superintendents insist on acting contrary to the Department's stated position, they should, at minimum, put into an escrow account the difference between the amount generated by the proportional-student enrollment formula and the Title I, Part A formula.  That way, non-public school students and teachers can begin to receive at least some of the equitable services to which they are entitled.

For the record, we believe your membership fundamentally misunderstands the statutory text mandating equitable services.  The CARES Act is a special, pandemic-related appropriation to benefit *all* American students, teachers, and families.  There is nothing in the Act suggesting Congress intended to discriminate between children based on public or non-public school attendance, as you seem to do.  The virus affects everyone.

Your members ask us to read the phrase "equitable services in the same manner as provided under section 1117 of the ESEA of 1965" as if Congress simply incorporated the entirety of section 1117 by reference.  But this cannot be right.  It is not supported by the CARES Act's plain language, would improperly discriminate against an entire class of children, and prevent a reasoned and harmonious construction of the law giving effect to all relevant statutory provisions.

Letter to Ms. Miller
Page 2

To be clear, the CARES Act is not a Title I program, although we see how Congress' use of the Title I, Part A formula as a first cut to distribute resources to LEAs through the Elementary and Secondary Schools Emergency Relief Fund (ESSER Funds) might be misleading to some. To begin with, the CARES Act's student eligibility and use of funds provisions are significantly broader than those under Title I, Part A. As you know, section 1117(a)(3) requires that educational services and other benefits for students in non-public schools must be equitable in comparison to those for public school students. As you also know, the services that an LEA may provide under the CARES Act programs are clearly available to *all* public school students and teachers, not only low-income students and their teachers. Similarly, there is no limitation on attending a Title I school to receive services under CARES Act programs. Therefore, to make services equitable in comparison to public school students, it follows that the same principles must apply in providing equitable services to all non-public school students and teachers.

We also note the requirement to provide equitable services is "in the same manner as provided under section 1117." By using the phrase "in the same manner," Congress appears to acknowledge that equitable services under the CARES Act cannot be provided exactly like Title I, Part A services, which makes sense given the CARES Act's particular funding structure (e.g. CARES Act eligibility is not limited by poverty, low-achievement, or residence as under section 1117) and separate consultation and public control of funds provisions, among other things. Had it been otherwise, Congress would have simply and explicitly directed LEAs to provide equitable services under section 1117. It did not do so, contrary to the assertion in your letter.

Given the practical interplay between the CARES Act and section 1117, it is reasonable to determine that the proportional share of CARES Act funds should be budgeted for equitable services based on enrollment. It is worth noting that poverty is already accounted for in the LEA allocations under the ESSER Fund through the Title I, Part A formula. Similarly, the Governor's Education Emergency Relief Fund (GEER Fund) state allocation is based significantly on each State's share of Title I formula children but is explicitly authorized and designed to serve all students and teachers. In determining the share of CARES Act funds for equitable services based on enrollment, less than 10 percent of the funding nationwide will be provided for equitable services for non-public school students and teachers, with more than 90 percent of the funding directed to public school students and teachers.

We trust that LEAs understand their general obligations to provide equitable services to students and teachers in non-public schools when they accept money from the $13.2 billion ESSER Fund or the $3 billion GEER Fund. Although I understand their reflex to share as little as possible with students and teachers outside of their control, I would remind states and LEAs that their non-public school peers have also been overwhelmed by COVID-19. All students and teachers have had their learning disrupted. A growing list of non-public schools have announced they will not be able to re-open, and these school closures are concentrated in low-income and middle-class communities. I would encourage educators everywhere to be as concerned about those students and teachers as they are with those in public schools.

Letter to Ms. Miller
Page 3


Again, the Department appreciates the opportunity to engage with you and your members.  We look forward to continuing to work together to assist state education leaders and LEAs as they implement the CARES Act programs.

Sincerely,

Betsy DeVos