**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 2:20-cv-01119-MLP |
| Plaintiff, | DECLARATION OF THOMAS J. (T.J.) KELLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| BETSY DeVOS, in her official capacity as Secretary of the United States Department of Education; and the UNITED STATES DEPARTMENT OF EDUCATION, a federal agency, | |
| Defendants. | |

I, Thomas J. (T.J.) Kelly, hereby declare as follows:

1.      I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge. I am currently employed as the Chief Financial Officer at the Office of Superintendent of Public Instruction.

2.      I submit this declaration in support of the State of Washington's lawsuit against the United States Department of Education (Department) challenging the interim final rule (Interim Rule or Rule) it issued that requires Local Educational Agencies (LEAs) to use one of two formulas to allocate Elementary and Secondary School Emergency Relief (ESSER) Funds provided by the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act). I have compiled the information in the statements below through my personal knowledge or based on the documents that I have reviewed. I have familiarized myself with the information contained

DECLARATION OF
THOMAS J. (T.J.) KELLY
NO. 2:20-cv-01119-MLP

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

in the CARES Act sections regarding primary and secondary education as well as with the Department's interim final rule. I am also familiar with the requirements of section 1117 of the Elementary and Secondary Education Act (ESEA).

3.      I have served as the Chief Financial Officer at the Washington State Office of Superintendent of Public Instruction (OSPI) since January 2019. My service with the agency dates to September 2009, when I was hired as the Associate Director of the School Apportionment and Financial Services (SAFS) office within OSPI. In October 2012, I was elevated to the position of SAFS Director. In all, I have over ten years of experience with state funding formulas and guidelines for districts regarding accounting and reporting fiscal, enrollment, and employee information for school districts in our state.

4.      As the Chief Financial Officer of OSPI, I manage the Financial Resources Division, which is responsible for the distribution of funding, agency budgeting, research on school funding, and collecting data on enrollment, personnel, and financial information. The Division includes the following offices, whose directors report directly to the Chief Financial Officer: Child Nutrition, Student Transportation, Apportionment and Financial Services, School Facilities and Organization, Agency Financial Services, and Federal Fiscal Policy.

5.      The staff in the Federal Fiscal Policy office work with other staff I oversee to develop and implement OSPI's systems to provide federal program funding, including ESSER Funds and Title I, Part A funding, to LEAs. This work includes providing written guidance to LEAs, technical assistance, and training. Other divisions at OSPI, including the Special Programs and Federal Accountability Division, provide guidance, technical assistance, and training to LEAs to ensure that LEAs in Washington comply with federal program requirements. I help supervise and personally participate in this work.

6.      OSPI oversees 2,369 primary and secondary schools, serving over 1,147,000 students across the state. The State's public education system is comprised of 295 public school districts, 14 authorized charter schools, and six state-tribal education compact schools. Of the

DECLARATION OF
THOMAS J. (T.J.) KELLY
NO. 2:20-cv-01119-MLP

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  State's 2,369 primary and secondary public schools, 1,002 participate in Title I, Part A. In the

2  2019–20 academic year, OSPI served 520,475 low-income students. Each year, a small number of

3  school districts elect not to receive Title I, Part A funds even though they are eligible. These districts

4  typically have very small enrollment numbers and benefit from enhanced state funding due to their

5  low enrollment, which negates the need to accept what is deemed as a minimal amount of federal

6  Title I dollars.

7          7.       The Washington State Board of Education accredits private schools to operate

8  within the state. At the time of the passage of the CARES Act during the 2019–20 school year, there

9  were 504 accredited private schools serving a total of 84,058 students.

10         8.       OSPI oversees LEA compliance with Title I, Part A's equitable services

11 requirement in a variety of ways. The procedure to determine compliance begins with the

12 responsibility of private schools to submit the "Intent to Participate Form" to OSPI and school

13 districts in which the private school resides. The next step is for OSPI to review the iGrants FP 201

14 form that OSPI has developed and makes available LEAs to determine, first, whether a school

15 district has complied with the Title I, Part A consultation requirement and, second, whether the

16 district has collected the students' low-income information from the private school. This number is

17 reported in FP 201, and OSPI's calculation to determine the per pupil amount is made based upon

18 the school district's per pupil amount. The FP 201 application is approved by OSPI Title I, Part A

19 staff if the private school information is correctly reported.

20         9.       OSPI's Consolidated Review Process is the formal review of districts to ensure that

21 the district has met all private school requirements. This occurs on a five-year rotation, and all

22 districts are monitored within that five-year rotation. Included in the monitoring accountability are

23 questions that specifically address private school equitable participation requirements. The

24 monitoring includes visiting participating private schools who are asked to confirm that equitable

25 services are provided by the district.

26

DECLARATION OF
THOMAS J. (T.J.) KELLY
NO. 2:20-cv-01119-MLP

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

10.     Both the CARES Act and the ESEA require school districts to consult with private schools in determining the services to be provided for private schools. As the direct grantee of the CARES Act funds and funds provided under Title I-A, OSPI ensures compliance with both laws. To do so in a manner consistent with the ESEA, OSPI's two private schools ombuds review complaints from private schools and make decisions. The ombuds are responsible for addressing consultation requirements and work with school districts that are required to consult with participating private schools. They have developed consultation tracking documents that districts are required to keep for program reviews. If complaints are lodged against a district for not meeting consultation requirements, they are responsible for working with the private school to address all issues. The ombuds negotiate with school districts and private schools to ensure that private school students and educators receive the ESSA services that they are entitled to receive. These complaints cover the amount of funds dedicated to services for private schools, the consultation process, and the services provided.

11.     If the complainant is not satisfied with OSPI's decision, the complainant may formally request a review by the Department. The decisions by OSPI can be reviewed by the Department, who can ask for reimbursement of funds or terminate awards of funds. This means that OSPI and school districts can lose funds for failing to comply with Department interpretations.

12.     In March 2020, Congress passed the CARES Act, which provided funding to the States to assist with the costs associated with disruptions in education due to COVID-19. Under the Act, each State is required to allocate not less than 90% of those funds as subgrants to LEAs (90% LEA allocation).

13.     In Washington State, school districts are LEAs for purposes of the CARES Act and the Elementary and Secondary Education Act of 1965.

14.     The CARES Act requires LEAs to provide equitable services "in the same manner as provided under section 1117 of the ESEA of 1965 to students and teachers in

DECLARATION OF
THOMAS J. (T.J.) KELLY
NO. 2:20-cv-01119-MLP

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

non-public schools." Section 18003(d) of the CARES Act enumerates eligible uses of the funds provided to LEAs. The remaining 10% (10% SEA allocation) will be distributed by OSPI, which is subject to the CARES Act requirements in distributing its funds.

15.    OSPI was relieved when Congress allocated money to states and local education agencies to support students, families, and teachers impacted by COVID-19 and the related disruptions. The disruption of primary and secondary education services has left many of Washington State's most vulnerable students without access to services provided by public educational institutions, including daily meal programs, educational technology, internet access, supplemental after-school programs, mental health services, and countless other services and activities that schools, students, and families rely on to support student learning. The impact is particularly felt by primary and secondary school students from low-income families who often rely on services offered by the public education system. For example, as many as 45% of Washington's students qualify for free or reduced-price meals.

16.    Many of our constituents are facing added challenges related to remote learning. Parents and families have expressed difficulty with the responsibility of supporting the educational activities of their children while managing their own jobs during the pandemic. Teachers have also reported pedagogical challenges associated with remote learning for all students. These challenges can be particularly acute for students who need additional supports because of a physical disability or a significant learning disability, English Learners who do not have the language skills to learn content areas in English, migratory students who do not have access to electronic devices for on-line learning, and low-income students who do not have computer or broadband access to participate in on-line learning.

17.    The cost of providing core services to our students, families, and teachers has increased because of the COVID-19 pandemic. These include increased costs for school districts' food service employees and custodial staff preparing free and reduced-price meals for students; costs for childcare providers who interact with students or parents and are entitled to

DECLARATION OF
THOMAS J. (T.J.) KELLY
NO. 2:20-cv-01119-MLP

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1 hazard pay; food and technology expenses; and new expenses, including personal protective

2 equipment (PPE) and sanitation devices and supplies, that now must be factored into school

3 budgets. In addition, reducing barriers to effective student remote learning include connectivity

4 costs for on-line learning for students who do not having computers or other electronic devices

5 to access on-line learning.

6      18.     After OSPI became aware of passage of the CARES Act and its allocation of

7 funds to elementary and secondary schools, OSPI immediately began working on the application

8 for those funds. The agency submitted its application on April 27, 2020. As part of the

9 application process, OSPI had to certify that OSPI and its subgrantees would comply with state

10 and federal laws, as follows:

11
PROGRAMMATIC, FISCAL, AND REPORTING ASSURANCES The [Chief
12 State School Officer or his/her authorized representative] assures the following:

13 1. The [State Education Agency (SEA)] will allocate no less than 90 percent of
the grant funds under this program to local educational agencies (LEAs)
14 (including charter schools that are LEAs) in the State. Under the ESSER Fund,
the SEA will award grants by formula to State educational agencies (SEAs) for
15 the purpose of providing LEAs, including charter schools that are LEAs, with
emergency relief funds to address the impact that the Novel Coronavirus Disease
16 2019 (COVID-19) has had, and continues to have, on elementary and secondary
schools across the Nation. This includes both continuing to provide educational
17 services, such as remote learning, while schools and campuses are closed, and
developing and implementing plans for the return to normal operations. The SEA
18 will allocate these funds to LEAs on the basis of their respective shares of funds
received under title I, part A of the Elementary and Secondary Education Act of
19 1965 in fiscal year 2019.

20 2. The SEA will use the remaining funds (hereafter SEA reserve) for emergency
needs as determined by the SEA to address issues related to COVID-19, which
21 may be addressed through the use of grants or contracts. From an SEA's reserve,
the SEA may use not more than 1/2 of 1 percent of the SEA's total grant for
22 administrative costs.

23 …

24 4. The SEA will ensure that LEAs receiving ESSER funds will provide equitable
services to students and teachers in non-public schools as required under 18005
25 of Division B of the CARES Act.

26 5. The SEA will ensure that an LEA receiving ESSER funds will provide
equitable services to students and teachers in non-public schools located within

DECLARATION OF               6           ATTORNEY GENERAL OF WASHINGTON
THOMAS J. (T.J.) KELLY                      Complex Litigation Division
NO. 2:20-cv-01119-MLP                    800 5th Avenue, Suite 2000
                                               Seattle, WA 98104-3188
                                                  (206) 464-7744

the LEA in the same manner as provided under section 1117 of the ESEA, as determined through timely and meaningful consultation with representatives of non-public schools. The SEA will ensure that a public agency will maintain control of funds for the services and assistance provided to a non-public school under the ESSER Fund. The SEA will ensure that a public agency will have title to materials, equipment, and property purchased with ESSER funds. The SEA will ensure that services to a non-public school with ESSER funds will be provided by a public agency directly, or through contract with, another public or private entity.

19.     The Department granted OSPI's application on April 29, 2020, awarding $216,892,447 million. As noted above, OSPI is responsible for disbursing the 90% allocation to LEAs as subgrantees. Because the LEAs are subgrantees, OSPI is obligated to ensure that the LEAs conform with state and federal laws. This includes compliance with Department rules. Also consistent with the CARES Act, OSPI has the responsibility to distribute the remaining 10% allocation. As a result, those funds are subject to compliance with state and federal laws, including the Interim Rule.

20.     Because the Legislature has not yet explicitly appropriated the ESSER Funds to OSPI, the Washington State Office of Financial Management in the Governor's Office (OFM) reviewed OSPI's request for authority to spend federal dollars through a process called unanticipated receipts approval. On June 15, 2020, OFM granted OSPI authority to spend 80% of the 90% LEA allocation, and a small portion of the 10% SEA allocation provided directly to school districts. On July 16, 2020, OFM approved the remaining portion of the 90% LEA allocation for distribution.

21.     For the 90% LEA allocation, the CARES Act gives Washington school districts the discretion to spend funds consistent with the CARES Act. Prior to being approved to access these funds, LEAs must fill out a budget for expenditure of funds, which serves as evidence that the expenditures align with federal law. LEAs must then submit monthly claims to receive payment of the funds through OSPI's regular monthly process for apportioning state and federal dollars to LEAs. An LEA's request for ESSER Fund grant payments made by the 15th of each

DECLARATION OF
THOMAS J. (T.J.) KELLY
NO. 2:20-cv-01119-MLP

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  month will be paid by OSPI as a part of the LEA's apportionment payment at the end of that

2  month.

3      22.    The CARES Act provides that school districts and OSPI must use the ESSER

4  Funds for purposes of preventing further spread of, responding to, and recovering from the

5  effects of COVID-19. This includes providing the following services:

6          a.    Providing online support and a technology helpline for students as they

7      learn to use new technology for distance learning;

8          b.    Hiring new staff to lead and support the transition to distance learning;

9          c.    Providing childcare to first responders and other members of the

10     community;

11         d.    Delivering breakfast and lunch five days a week to students who qualify

12     for free and reduced meals;

13         e.    Developing trainings for students, staff and parents on how to use

14     technology platforms and best practices for distance learning;

15         f.    Providing wireless internet access to students who do not have internet

16     connectivity at home;

17         g.    Covering extra staffing costs;

18         h.    Purchasing sanitizing and cleaning supplies;

19         i.    Investing in new technology to enable and improve distance-learning;

20         j.    Providing distance-learning related professional development services for

21     faculty and staff;

22         k.     Other expenditures as outlined in section 18003 of the CARES Act.

23     23.    On April 30, 2020, the Department issued a document titled, "Providing

24  Equitable Services to Students and Teachers in Non-Public Schools Under the CARES Act

25  Programs" (Guidance). The Guidance states that the CARES Act's requirement that LEAs

26  should distribute funds "in the same manner as provided under section 1117" meant that LEAs

DECLARATION OF
THOMAS J. (T.J.) KELLY
NO. 2:20-cv-01119-MLP

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

should distribute funds based on the total number of enrolled students in public and private schools, regardless of the income-levels of those students' families.

24.     OSPI was concerned in reviewing the Department's interpretation, as it followed neither the plain language of the CARES Act nor the usual practice for section 1117 Title I-A funds. Further, in most school districts in Washington State, the percentage of students in low-income families is significantly higher in public schools than in private schools. The result of the Department's Guidance would have resulted in the reallocation of significant CARES Act funds from low-income public-school students to higher-income private-school students. The Department informed school districts that the Guidance was not legally binding so districts could allocate funds consistent with the CARES Act.

25.     Because of the confusion surrounding the Guidance, the Department's statement that it was not legally binding, its clear deviation from the plain text of the CARES Act, and the harmful effect it would have on Washington State public school students, OSPI initially provided guidance to school districts that only private schools that had received equitable services under Title I, Part A in the prior school year would be eligible to participate in equitable services under ESSER. When school districts learned that the Department intended to issue a rule mandating that all private schools—and all their students—must be counted in the CARES Act equitable services calculation, districts reported to OSPI that this would significantly decrease the funding they expected to receive for COVID-related expenses.

26.     On June 25, 2020, the Department released the Interim Rule. The Rule was published in the Federal Register and became effective on July 1, 2020. The Rule requires LEAs to use one of two formulas to allocate ESSER Funds between public and private institutions. OSPI is also subject to the CARES Act requirements in distributing its funds. The first formula—the "enrollment-based formula"—requires districts to calculate the proportional share for private schools by comparing the total enrollment of participating private schools to the total enrollment in both public and private schools. The second formula—the "poverty-based

DECLARATION OF
THOMAS J. (T.J.) KELLY
NO. 2:20-cv-01119-MLP

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

formula"—permits LEAs to use the formula provided in section 1117(a)(4)(A), but requires the schools to only administer the funds to students participating under Title I, Part A of the ESEA.

27.    However, these formulas are inconsistent with the mandate of the CARES Act and the formula OSPI typically uses under section 1117(a)(4)(A).

28.    Both available formulas under the Interim Rule impair OSPI's ability to allocate ESSER Funds to students, teachers, and families in Washington who are most in need of additional support. The true impact of the proposed rules as compared to those identified under section 1117(a)(4)(A) of the CARES Act cannot be specifically identified due to lack of private school enrollment data reported to the SEA. Private schools are only required to report free and reduced priced eligible enrollment to OSPI, not total enrollment. OSPI has used the best information available to reasonably project or identify the general trends of funding distribution between public and private schools in the two scenarios. We acknowledge that specific impacts are not identifiable given the information available to us. OSPI believes that the estimates shown represent the minimal impact to public schools in the state when comparing the two equitable share methodologies.

a.    If the Department's poverty-based formula is used, it would necessarily deny CARES Act ESSER Funds to all schools that did not participate in Title I programs for the previous year. According to OSPI data, 1,367 schools did not participate in Title I, Part A during the 201-20 school year. School districts that elect to use the poverty-based formula will not be able to expend ESSER Funds to support students and staff in those 1,367 schools—including students in poverty who attend these schools. In addition, 14 small school districts and two other state-recognized schools did not designate any of their schools as Title I, Part A schools—either because none of the districts' schools were eligible, or because, for the reasons identified above, the district elected to forego the Title I dollars. Approximately 480 students are enrolled in those districts. None of them

DECLARATION OF
THOMAS J. (T.J.) KELLY
NO. 2:20-cv-01119-MLP

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  would be eligible to receive support under the CARES Act using the poverty-based

2  formula.

3            b.       If the Department's enrollment-based formula is used, OSPI estimated

4  that private schools statewide would receive at least 4.5% of the Washington's ESSER

5  Funds allocation. This is approximately $5 million more (at minimum) than the amount

6  we estimate the private schools would otherwise be eligible to receive under the CARES

7  Act statutory formula. We base this calculation on the most up-to-date private school

8  enrollment numbers we have. There is no uniform count of students and some schools

9  typically underreport their student enrollments. We expect that the true enrollment count

10  is much higher than this. Regardless, any diminishment in the ESSER Funds that go to

11  our public schools—let alone $5 million—will reduce the services that the State is able

12  to provide to our students, families, and teachers who are most in need of relief from

13  expenses related to the COVID-19 pandemic.

14            29.      In addition, section 76.665(c)(3) of the Interim Rule appears to require that school

15  districts using the poverty-based formula in its Title I schools are subject to the supplement not

16  supplant rule. Supplement not supplant is a federal statutory provision requiring that federal

17  grant funds must add to (supplement) and not replace (supplant) other state or local funds when

18  providing general educational services for Title I schools. Although it is not clear from the

19  Interim Rule how this will affect ESSER Funds, school districts that use the poverty-based

20  formula may be precluded from using the Funds to pay for many of the otherwise allowable

21  services under the CARES Act. For reasons that are not articulated in the Final Rule, school

22  districts that use the enrollment-based formula do not appear to be subject to the supplement not

23  supplant rule, which means they would have fewer limits on how they can elect to expend their

24  subgrant dollars. OSPI anticipates that we will need to commit agency staff time to provide

25  technical assistance and guidance to school districts regarding the supplement and supplant

26  question. This will divert our staff from otherwise providing technical assistance and guidance

DECLARATION OF
THOMAS J. (T.J.) KELLY
NO. 2:20-cv-01119-MLP

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  to school districts regarding the allowable uses of ESSER Funds and how districts can claim

2  reimbursement for those expenditures.

3      30.    The Rule also provides that expenditures cannot be provided until after school

4  districts or OSPI have consulted with private schools and made their choice as to which formula

5  to use. In some cases, we anticipate this process of consultation will take months because some

6  private schools either do not respond to requests for consultation or provide delayed responses.

7  We expect this will be particularly so for private schools that have not previously participated in

8  equitable services consultations under Title I, Part A. This means that districts and schools might

9  not have access to ESSER Funds until months from now.

10     31.    Upon issuance of the Rule, OSPI has been reviewing and preparing materials for

11  school districts to ensure compliance. As noted above, the system through which districts claim

12  funds was released on July 16 and is structured on the original plain language of the CARES

13  Act, not the Final Rule.  OSPI has advised districts that the structure of the claiming system does

14  not meet the requirements of the Rule.

15     32.    Since OSPI has discretion to allocate 10% of the funds, OSPI is subject to

16  compliance with the Rule with respect to those funds. Currently, OSPI intends to utilize the 10%

17  SEA allocations on priorities such as providing no-cost internet connectivity to high poverty

18  students and families, professional development for educators on instructional delivery through

19  an on-line modality, and funding for community-based organizations that focus on providing

20  childcare opportunities.

21     33.    Any diminishment in funds harms OSPI's ability to accomplish its mission to

22  transform K-12 education into a system that is centered on closing opportunity gaps and is

23  characterized by high expectations for all students and educators. OSPI seeks to achieve this

24  mission by developing equity-based policies and supports that empower educators, families, and

25  communities. The Interim Rule diverts much needed funds from the public K-12 system in ways

26  that could have greater impact of those students currently at risk of falling further behind. The

DECLARATION OF
THOMAS J. (T.J.) KELLY
NO. 2:20-cv-01119-MLP

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  State intends to makes specific targeted investments in services that will create engagement with

2  and accountability for all students and staff which will mitigate risks of widening the

3  achievement gap during this pandemic. The Interim Rule harms that effort.

4        34.     Public schools already face significant budgetary constraints.  School districts are

5  currently planning for multiple educational delivery models in the 2020-21 school year that

6  balance the need to protect the health of students and staff in the State while providing all

7  students with educational opportunity and access to necessary services. Not knowing how

8  students and families will chose to engage in education or how that will change based on fast-

9  changing public health requirements are unprecedented challenges for OSPI and our K-12

10  system. The Department's restrictions come at a time when resource-strapped institutions are

11  scrambling to prepare for the coming school year while continuing to support needy students

12  who are disproportionately impacted by the disruptions caused by COVID-19.

13        35.     In addition, as a direct grantee of the Department, OSPI has exclusive control of

14  10% SEA allocation and is tasked with and liable for ensuring LEAs' compliance in the expenditure

15  of ESSER funds. As noted above, OSPI was required to submit a Certification and Agreement

16  stating that it will comply with all federal laws and regulations. The Department may also require

17  the return with interest of any funds not distributed according to the Rule. OSPI runs the risk of

18  an enforcement action by the Department if ESSER Funds are not allocated according to one of

19  the two Interim Rule formulas. Because of significant budgetary constraints, OSPI would not be

20  able to retroactively pay private schools a greater share of the ESSER Funds than originally

21  allocated under the formula required under section 1117(a)(4)(A).

22        36.     As such, OSPI faces a significantly increased administrative burden due to the

23  Rule. The burden on OSPI and the LEAs to distribute funds to public and private schools "in the

24  same manner as provided by section 1117" would have been minimal, but the Rule departs from

25  that approach and would require OSPI and LEAs to develop and implement a new set of criteria

26  for the distribution of funding. The administrative burden of adopting a new formula to allocate

DECLARATION OF
THOMAS J. (T.J.) KELLY
NO. 2:20-cv-01119-MLP

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

the funds comes at a time when districts are already dealing with an unprecedented number of unknown factors heading into the 2020-21 school year. The Interim Rule adds yet another obstacle for school districts attempting to create an effective and equitable learning environment for students during the pandemic.

37.     The CARES Act authorizes the use of ESSER Funds to reimburse LEAs for expenditures in response to COVID-19 dating back to mid-March. Given the plain language of the Act, LEA's well-established practices in providing equitable services under Title I, Part A, and guidance from OSPI, school districts' expenditure behavior and reaction to the pandemic was likely shaped by the expectation of implementing equitable share guidelines as stated under section 1117(a)(4)(A) of the ESEA. For example, school districts began purchasing PPE and cleaning supplies in March to keep students and staff safe in *all* of their schools. Under the plain language reading of the CARES Act, these districts should be able to claim reimbursement of these allowable district-wide costs *now*. The Interim Rule, however, gives these districts two bad options instead. First, they could use the poverty-based formula and seek reimbursement of these costs only for their Title I schools—which means the costs the districts incurred in non-Title schools could not be reimbursed with ESSER Fund dollars. Alternatively, school districts could elect to use the enrollment-based formula and request reimbursement for all of the allowable costs they incurred across the district since March. But this would mean the districts would have to share *more* of their ESSER Fund allocation with private schools. School districts—and OSPI—had no reason to believe that districts would be forced to make this intolerable choice when they began purchasing critical supplies this spring.

DECLARATION OF
THOMAS J. (T.J.) KELLY
NO. 2:20-cv-01119-MLP

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    I declare under penalty of perjury under the laws of the State of Washington and the

2  United States that the foregoing is true and correct.

3    DATED this 22nd day of July 2020, at Olympia        , Washington.

4

5    T. Kelly
     THOMAS J. (T.J.) KELLY
6    Chief Financial Officer
     Office of Superintendent of Public Instruction

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF                              15              ATTORNEY GENERAL OF WASHINGTON
THOMAS J. (T.J.) KELLY                                              Complex Litigation Division
NO. 2:20-cv-01119-MLP                                              800 5th Avenue, Suite 2000
                                                                    Seattle, WA 98104-3188
                                                                        (206) 464-7744