HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINTON
AT SEATTLE

STATE OF WASHINGTON,

Plaintiff,

v.

BETSY D. DeVOS, in her official capacity as
the United States Secretary of Education, and
UNITED STATES DEPARTMENT OF
EDUCATION,

Defendants.

No. 2:20-cv-1119-BJR

**AMICI PRIVATE SCHOOL
ASSOCIATIONS' AND ADVOCACY
GROUPS' AMICUS BRIEF IN
SUPPORT OF DEFENDANTS AND IN
OPPOSITION TO PRELIMINARY
INJUNCTION**

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

1

**TABLE OF CONTENTS**

2    INTRODUCTION .................................................................................................1

3    IDENTITY AND INTEREST OF AMICI ...........................................................2

4    ARGUMENT .......................................................................................................6

5       I.   The CARES Act Requires an "Equitable" Distribution Between Public and Private

6          Schools, Contrary to Plaintiff's Interpretation....................................................6

7       II.  The Same Harm and Public Interest Arguments Raised by Plaintiff Cut Equally in

8          the Opposite Direction When Private Schools Are Considered .......................10

9       III. Private Schools Are an Integral Part of Education Across the Country ...........13

10   CONCLUSION...................................................................................................15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Amicus Brief of Private School Associations and          Freedom Foundation
Advocacy Groups in Support of Defendants               P.O. Box 552
Case No. 2:20-cv-1119-BJR                         Olympia, WA, 98507
Page i                                     Phone: (360) 956-3482

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Bd. of Educ. v. Allen*,

4

      392 U.S. 236 (1968)............................................................................................ 13

5

*Gundy v. United States*,

6

      139 S. Ct. 2116 (2019)........................................................................................ 9

7

*Legacy Emanuel Hosp. & Health Ctr. v. Shalala*,

8

      97 F.3d 1261 (9th Cir. 1996) ............................................................................ 8

9

*Loughrin v. U.S.*,

10

      573 U.S. 351 (2014)..................................................................................... 7, 10

11

*S.E.C. v. McCarthy*,

12

      322 F.3d 650 (9th Cir. 2003) ....................................................................... 7, 10

13

*Wayman v. Southard*,

14

      23 U.S. (10 Wheat.) 1 (1825).............................................................................. 9

15

**Statutes**

16

20 U.S.C. § 6314 ....................................................................................................... 8

17

20 U.S.C. § 6315 ....................................................................................................... 8

18

20 U.S.C. § 6320 ........................................................................................... 7, 8, 9, 10

19

CARES Act § 18002 .......................................................................................... 6, 7, 10

20

CARES Act § 18003 ....................................................................................... 6, 7, 9, 10

21

CARES Act § 18005 .......................................................................................... 7, 8, 10

22

CARES Act § 5001 ................................................................................................... 12

23

**Other Authorities**

24

A. Egalite & P. Wolf, *A Review of Empirical Research on School Choice,* 91 Peabody

25

      Journal of Education 441 (2016)...................................................................... 15

26

A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* (2012)................ 7, 8, 10

27

C. DeAngelis & P. Wolf, *Private School Choice and Character: More Evidence from*

28

      *Milwaukee*, EDRE Working Paper 2019-03 (2019) ......................................... 15

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR
Page ii

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

1  Coronavirus Relief Fund: Guidance for State, Territorial, Local, and Tribal Governments,

2       United States Department of the Treasury (Updated June 30, 2020) .............................. 12

3  *COVID-19 Permanent Private School Closures*, Cato Institute,

4       https://www.cato.org/covid-19-permanent-private-closures ............................................ 11

5  *Fast Facts: Public and Private School Comparison*, National Center for Education

6       Statistics .................................................................................................................. 13

7  J. Cowen, et al., *Student Attainment and the Milwaukee Parental Choice Program: Final*

8       *Follow-up Analysis*, School Choice Demonstration Project (Feb. 2012) ........................ 14

9  *K-12 School District Finance Date*, Washington State. ........................................................... 12

10  Libby Sobic & Jessica Holmberg, *In This Together: How private and public charter*

11       *schools are serving their families and communities during the COVID-19 crisis*,

12       WILL (Mar 27, 2020) ................................................................................................ 14

13  Liv Finne, *School funding in the 2019 legislative session; Washington state public*

14       *schools now receive more money than most private schools*, Washington Policy

15       Center (July 2019) ...................................................................................................... 12

16  P. Wolf & M. McShane, *Is the Juice Worth the Squeeze? A Benefit/Cost Analysis of the*

17       *District of Columbia Opportunity Scholarship Program*, 8 Education Finance and

18       Policy 74 (2013) .......................................................................................................... 15

19  P. Wolf, *Do Voucher Students Attain Higher Levels of Education? Extended Evidence*

20       *from the Milwaukee Parental Choice Program*, Urban Institute (Feb. 2018) ................. 14

21  *Private School Statistics at a Glance*, CAPE, https://www.capenet.org/facts.html .................... 13

22  Robert C. Enlow, *The K-12 Financial Cliff: What States Could Face if Students Switch*

23       *Schooling Sectors*, EdChoice (Apr. 20, 2020) ............................................................. 12

24  Sarah D. Sparks, *Catholic School Closures Rise Amid COVID-19, Recession*, Ed Week

25       (June 9, 2020) .............................................................................................................. 11

26  *School Safety Report*, School Choice Wisconsin (2014) ......................................................... 14

27  **Rules**

28  34 C.F.R. § 76.665 ................................................................................................................. 9

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR
Page iii

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

**INTRODUCTION**

The CARES Act provides $16 billion in federal funding to support both public and private elementary and secondary schools impacted by the ongoing COVID-19 pandemic. Congress gave the Department of Education precise instructions for how to allocate these funds among States and among local school districts within States. It also required that money allocated to a district be shared between public and private schools. But instead of specifying the precise way that this was to be done, Congress directed the Department to ensure that private school students receive "equitable" services to those provided public school students using CARES Act funds. To that end, the Department developed a simple and sensible rule that offers States and local school districts two alternatives for distributing these funds while ensuring an "equitable" distribution between public and private schools. If a State or local school district uses CARES Act funds to benefit *all* students, then under the rule the funds must be distributed proportionally based on the total number of students in public and private schools. If, on the other hand, a State or local school district selects to use CARES Act funds to provide services that benefit only low-income or at-risk students or schools, then under the rule the funds may be allocated based on the proportion of such students in public and private schools.

Plaintiff Washington State asks this Court to invalidate the Department's sensible rule and instead impose an inequitable distribution that would favor public schools to the detriment of private schools and the students they serve. And Plaintiff's case rests on a textual argument that violates a basic canon of statutory construction—that different words mean different things, *especially* in the same sections of the same Act dealing with the same general issue. Plaintiff here wants the Department to be required to distribute money between public and private schools in proportion to how funds are distributed to states and among local districts. Congress could have done that, but it did not. It specifically used different words to address the different allocation among private and public schools within a district, referencing the requirement for equity. The Department, quite wisely, decided that equity would turn on the uses to which these funds are being put. If spent only on Title I students, then allocation in proportion to these students is equitable. If spent on all students, then allocation in keeping with a private school's share of all

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR
Page 1

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

1    students meets that requirement.

2         Plaintiff also unfairly suggests that the Department's rule unlawfully diverts millions of

3    CARES Act funds away from public schools, while completely ignoring the effect its requested

4    injunction would have on private schools, which face the same challenges due to the COVID-19

5    crisis. Amici file this brief to call this Court's attention to the flaws in Plaintiff's legal theory and

6    to highlight the harms an injunction will have on private schools. For the reasons discussed herein,

7    Amici request the Court deny Plaintiff's motion for a preliminary injunction.

8                         **IDENTITY AND INTEREST OF AMICI**[1]

9         The United States has over 33,000 private schools, with over five million students. Amici

10   are 39 associations and advocacy groups that represent and support private schools and their

11   families in Washington, Arizona, Arkansas, California, Colorado, Florida, Illinois, Indiana,

12   Louisiana, Michigan, Mississippi, Nevada, New Mexico, North Dakota, Ohio, Oklahoma,

13   Pennsylvania, Tennessee, Texas, Wisconsin, and throughout the nation. Amici include Catholic,

14   Orthodox Jewish, Islamic, Lutheran, other Christian, and independent secular schools, and

15   collectively serve millions of students:

16   - **Council for American Private Education** (CAPE) is a coalition of national organizations
17     and state affiliates serving private elementary and secondary schools. CAPE member
18     organizations represent about 80 percent of private school enrollment nationwide.

19   - **National Catholic Educational Association** (NCEA) is a professional membership
20     organization representing almost 150,000 Catholic educators serving more than 1.7 million
21     students in Catholic elementary and secondary schools. NCEA serves as a national voice
22     for Catholic schools, which are ministries of the Catholic Church in America.

23   - **Agudath Israel of America**, founded in 1922, is a national grassroots Orthodox Jewish
24     organization. Agudath Israel serves as a liaison between government at the federal, state,
25     and local levels and the entire spectrum of Orthodox Jewish educational institutions in the
26     United States, including approximately 750 day schools educating over 250,000 students.

---

[1] No counsel for a party authored this brief in whole or part, nor did any person or entity, other than amicus or its counsel, make a monetary contribution to the preparation or submission of this brief.

Amicus Brief of Private School Associations and                    Freedom Foundation
Advocacy Groups in Support of Defendants                           P.O. Box 552
Case No. 2:20-cv-1119-BJR                                          Olympia, WA, 98507
Page 2                                                            Phone: (360) 956-3482

- **Council of Islamic Schools in North America** (CISNA) is committed to promoting quality education at Islamic schools through advocacy, accreditation services, and professional development. CISNA has 101 member schools serving 23,000 students.

- **Association of Christian Schools International** (ACSI) is a nonprofit association providing support services to 2,500 Christian preschools and elementary and secondary schools and 90 post-secondary institutions in the U.S.

- **Association of Christian Teachers and Schools** is a national association of roughly 200 Christ-centered, Bible-based schools, serving over 26,000 students throughout the country.

- **WELS Commission on Lutheran Schools** exists to provide resources, support, and training for starting and strengthening Lutheran schools of the Wisconsin Synod. WELS schools educate over 42,000 students in its 434 schools located in 33 states.

- **Washington State Catholic Conference** is the common voice of the bishops in the archdiocese and dioceses in Washington, with schools serving over 27,000 students.

- **Washington Federation of Independent Schools (WFIS)** is a nonprofit, nonpartisan, membership organization representing 83,000 children in over 500 preK-12 schools across Washington since 1970.

- **American Federation for Children** (AFC) is a 501(c)(4) issue advocacy organization with state-based chapters in 11 states that seeks to empower families, especially lower-income families, with the freedom to choose the best K-12 education for their children.

- **EdChoice** is a 501(c)(3) nonpartisan, nonprofit organization and national leader in educational-choice research, legal defense and education, fiscal analysis, and policy development, whose mission is to advance educational freedom and choice for all.

- **Catholic Education Partners** works with state Catholic conferences, Bishops and other clergy, school leaders and families, and others to advance policies that allow more families to access Catholic education, while protecting the autonomy and integrity of schools.

- **Washington Policy Center (WPC)** is a Washington-based, independent, non-profit think tank that seeks to improve Washington's ability to educate every child by giving parents, principals, and teachers more control over the spending of public education dollars.

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR
Page 3

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

- **California Catholic Conference** (CCC) is the public policy arm of the Catholic Church in California and speaks on behalf of California's two archdioceses and ten dioceses, which include over 500 elementary and 100 secondary schools with roughly 208,000 students.

- **Colorado Catholic Conference** (CCC) represents the four Colorado bishops and three dioceses in public policy, advancing Catholic social teaching and the common good, including on behalf of the 54 Catholic schools in Colorado and their nearly 14,000 students.

- **Colorado Association of Private Schools** (CAPS) is an association of 65 private schools operating in Colorado, whose primary mission is to preserve the independence of Colorado's private schools and to uphold parental choice in education.

- **Indiana Non-Public Education Association** was established in 1974 as a membership association for non-public schools in Indiana. Today, the membership includes about 400 schools, including religious and independent secular schools.

- **Michigan Catholic Conference** (MCC) is a Michigan nonprofit membership corporation founded in 1963 that serves as the official voice of the Catholic Church in Michigan on matters of public policy, including education issues, and provides various services to the 222 Catholic schools, with over 50,000 students, throughout the State of Michigan.

- **Michigan Association of Non-Public Schools** (MANS) was formed in 1972 as a service provider and association of nonpublic schools in Michigan and serves 455 schools and their students to ensure they receive required services relating to health, safety, and welfare.

- **Midsouth Association of Independent Schools** is an association representing 122 private schools in Arkansas, Mississippi, Louisiana, and Tennessee, with over 40,000 students.

- **Catholic Conference of Oklahoma** (CCO) represents the Catholic Church in Oklahoma in all matters concerning public policy. In that role, CCO advocates for polices that aid the 35 Catholic schools in Oklahoma that educate more than 5,000 students.

- **Pennsylvania Affiliate of the Council for American Private Education** (PACAPE) is a nonpartisan association representing 90% of the private school community in Pennsylvania, which serves over 200,000 students and 50,000 teachers and staff.

- **Texas Private Schools Association** is a Texas-based association that represents roughly

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR
Page 4

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

900 accredited private schools throughout Texas, serving over 250,000 students.

- **Wisconsin Council of Religious & Independent Schools** (WCRIS) is a nonprofit, nonpartisan, membership organization representing 100,000 children and more than 10,000 teachers and staff in 600 K-12 schools across Wisconsin since 1974.

- **Wisconsin Catholic Conference** (WCC), led by the Roman Catholic bishops of Wisconsin, is the public policy voice of the Catholic Church throughout the state and represents the nearly 280 Catholic schools in Wisconsin serving roughly 53,000 students.

- **School Choice Wisconsin Action** is a membership organization that advocates on behalf of the 342 private schools participating in the Wisconsin Private Parental Choice Programs.

- **Goldwater Institute** is an Arizona-based nonpartisan public policy and research foundation, with a principal goal of defending the right of parents to choose the best educational options for their children, including private options when they see fit.

- **California Policy Center** is a non-profit focused on advancing public policies to improve California's economy, including expanding school choice regardless of families' zip codes.

- **James Madison Institute** (JMI) is Florida's premier free-market think tank. Founded in 1987 by Dr. Stan Marshall, a former president of Florida State University, JMI has long been a proponent of free-market solutions in K-12 and higher education.

- **Liberty Justice Center** is an Illinois-based, nonprofit, nonpartisan, public-interest law firm that seeks to protect fundamental rights through precedent-setting litigation, including its defense of parental choice in education in legal settings nationwide.

- **Mackinac Center for Public Policy** is a Michigan-based, nonpartisan research and educational institute committed to expanding opportunities for Michigan student success by empowering families with access to a variety of effective educational options.

- **Great Lakes Education Foundation** is a Michigan-based foundation committed to researching and promoting educational opportunity for every Michigan family.

- **Mississippi Center for Public Policy** is a Mississippi-based think tank that believes in parents' right to direct their children's education and advocates for policy solutions to expand public and private educational opportunities for Mississippi children.

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR
Page 5

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

- **Nevada Policy Research Institute** (NPRI) is a Nevada-based nonpartisan education and research organization fighting to empower parents with the freedom to choose the educational options that best suit their children's unique needs.

- **Rio Grande Foundation** is New Mexico's free market public policy think tank that advocates for educational choice and improved student outcomes in the K-12 system.

- **Roughrider Policy Center** is a North Dakota–based think tank committed to expanding opportunities for student success by empowering families with access to a variety of educational options, using high quality research to inform policymakers and the public.

- **Buckeye Institute** is an Ohio-based nonpartisan, nonprofit organization founded in 1989 as an independent research and educational institution. The Buckeye Institute has been a longtime proponent of public policy solutions for education reform.

- **Commonwealth Foundation** is an issue-based nonprofit in Pennsylvania that aims to advance public policies that empower parents to choose the best school for their child's needs, regardless of race, income, or zip-code.

- **School Choice Wisconsin** is a Wisconsin-based, nonprofit policy and advocacy organization that seeks to empower parents by developing, supporting, and promoting the ideas and policies that create vibrant, quality options in K-12 education in Wisconsin.

## ARGUMENT

**I.    The CARES Act Requires an "Equitable" Distribution Between Public and Private Schools, Contrary to Plaintiff's Interpretation**

The CARES Act appropriates roughly $16 billion for grants to support both public and private schools impacted by the COVID-19 pandemic, via two separate funds: the Elementary and Secondary School Emergency Relief (ESSER) Fund and the Governor's Emergency Education Relief (GEER) Fund. *See* Coronavirus Aid, Relief, And Economic Security Act ("CARES Act"), H.R. 748, 116th Cong. (2020), §§ 18002, 18003. The provisions establishing these funds each adopt precise formulas for how the money is to be allocated among States and among school districts within a State. For the ESSER fund (which accounts for approximately 82% of the $16 billion), grants "shall be allocated … to each State *in the same proportion as* each State received

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR
Page 6

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

under [Title I] in the most recent fiscal year." CARES Act § 18003(b). And for local districts within a State, ESSER funds shall be distributed "*in proportion to* the amount of funds such local educational agencies … received under [Title I] in the most recent fiscal year." CARES Act § 18003(c). Similarly, the CARES Act directs that GEER funds shall be allocated to each State using a precise formula: "60 percent on the basis of their relative population" and "40 percent on the basis of their relative number of children under section 1124(c) of [Title I]." CARES Act § 18002(b). Thus, the plain language requires that CARES Act disbursements for States and local school districts must directly incorporate, either in whole or in part, the Title I formulas.

Section 18005 of the CARES Act then provides that any "local educational agency receiving funds under sections 18002 [GEER Fund] or 18003 [ESSER Fund]" must provide "equitable services" to "students and teachers in non-public schools." CARES Act § 18005(a). Put differently, funds allocated to a district must be equitably shared with private schools. Unlike the subsections just described for the allocations among States and among local school districts—which directly import the Title I formulas with phrases like "in the same proportion as"—Section 18005 provides that these "equitable services" shall be supplied to private schools "in the *same manner as* provided under section 1117 of [Title I]." Like other parts of Title I, Section 1117 contains a formula for the allocation of funds to private schools, *see* 20 U.S.C. § 6320(a)(4)(A), so Congress *could have* said, like it did for the inter-State and inter-district allocations, that CARES Act funds should be distributed between public and private schools "in the same proportion as" under Section 1117. But it did not. Instead, it said that private schools shall be provided "equitable services" "in the *same manner as*" Section 1117 of Title I.

Why the difference? A foundational canon of statutory construction is that "different term[s] denote[ ] a different idea." *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012); *Loughrin v. U.S.*, 573 U.S. 351, 357 (2014); *S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words") (collecting cases). This canon is most relevant where, like here, two closely related subsections of the same act, dealing with the same basic question (allocation of funds between States and districts versus between public and

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR
Page 7

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

private schools), use very different phrases. *See* Scalia & Garner, *supra*, at 173; *Legacy Emanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996) ("the use of different terms in adjacent provisions … creates a presumption that [Congress] intended the terms to have different meanings"). So the phrase "in the same manner as" must mean something different than "in the same proportion as." The interpretive question for the Department, and for this Court, is what does "in the same manner as" mean?

Fortunately, there is a relatively simple explanation. Due to certain differences between the CARES Act and Title I, a wholesale incorporation of Section 1117's allocation formula would actually *undermine* Congress's primary goal of ensuring that private school students receive "equitable services" to those provided to public school students. Thus Congress used more flexible language—"in the same manner"—to allow the Department to determine how to distribute these funds "equitably." Further background on Title I and the CARES Act helps to illustrate the point.

Title I is a program designed to provide academic and supportive services directly to low-income and at-risk students or at-risk public schools, *see* 20 U.S.C. §§ 6314; 6315(c). Section 1117, the section referenced in § 18005 of the CARES Act, requires services for similar students in private schools. The core principle underlying Section 1117 is that private school students should receive similar services to those provided to public school students. Indeed, Section 1117 says this directly: "Educational services and other benefits for such private school children shall be equitable in comparison to services and other benefits for public school children participating under this part." 20 U.S.C. § 6320(3)(A). And Section 1117 repeats the word "equitable" in ten other places: (a)(1)(A) ("on an equitable basis"); (a)(1)(B) (same); (e) (same); (a)(4)(D) ("equitable share"); (b)(1) ("equitable and effective programs"); (b)(1)(E) ("equitable services"); (b)(1)(J) (same); (b)(4) (same); (c) (same); (b)(5) ("equitable").

There is an important difference, however, between Title I and the CARES Act. Title I services are provided directly to low-income and at-risk students or are part of programs within at-risk schools, 20 U.S.C. §§ 6314; 6315(c), whereas CARES Act funds may be used to benefit all students, regardless of whether the students themselves or their schools would qualify under Title I. Such uses include "provid[ing] technology for online learning to *all* students," "training and

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR
Page 8

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

professional development for staff" about "minimizing the spread of infectious diseases," "purchasing supplies to sanitize and clean the facilities," "planning for and coordinating during long-term closures," "providing principals and others school leaders with the resources necessary to address the needs of their individual schools," and "other activities that are necessary to maintain the operation of and continuity of services" such as "continuing to employ existing staff." CARES Act §§ 18003(d)(3), (6), (7), (8), (12). CARES Act funds can *also* be used for Title I services provided directly to at-risk students or schools but the funds are not restricted to that.

Given that CARES Act funding can be used to support schools in a way that benefits all students, Congress realized that it could not both mechanically apply the Title I allocation formula—as it did for the allocations among States and districts—and at the same time ensure that private schools receive "equitable services." Thus, Congress instead used more flexible language, directing the Department to adopt a public-private allocation "in the same manner as" section 1117, while leaving to the Department to "fill up the details." *Gundy v. United States*, 139 S. Ct. 2116, 2136 (2019) (Gorsuch, J., dissenting) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 43 (1825)). And the Department's interim rule does so in a way most consistent with the heart of Section 1117, namely that the funds provided to private schools are "equitable in comparison to services and other benefits for public school children." 20 U.S.C. § 6320(3)(A). The Department's Rule gives school districts flexibility in how they use CARES Act funds, but requires an allocation that will preserve an "equitable" distribution: if CARES Act funds are used to benefit all students, then the funds must be distributed in proportion to the total number of students in public and private schools; alternatively, if used to benefit only Title I students or schools, then the funds may be distributed in proportion to the number of Title I students. 34 C.F.R. § 76.665(c).[2]

To give a simple example, if a State or local school district decides to use CARES Act funds to help schools "provide technology for online learning to *all* students," § 18003(d)(8), the cost of that will obviously be a function of the total number of students in the school, not just the number of Title I students. The only way to guarantee an "equitable service" for private schools,

---

[2] Some Amici believe the most "equitable" approach would be an allocation based on the total number of students and submitted comments to the Department to that effect. Still, the Department's middle-ground approach is far more equitable than what Plaintiff argues for.

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR
Page 9

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

as required by § 18005(a), would be a proportional grant towards virtual learning technology for "all" of their students as well. So too with many of the other approved uses of CARES Act funds. The costs of "training and professional development for staff" and "other activities that are necessary to … continuing to employ existing staff," § 18003(d)(6), (12), depend on the number of staff, which is most closely correlated with the total number of students in the school. And the costs of "purchasing supplies to sanitize and clean the facilities," or other "resources necessary to address the needs of their individual schools," § 18003(d)(3), (7), depend on the physical size of the school, which, again, is most closely correlated with the total number of students in the school.

Plaintiff asks this Court to interpret the CARES Act to require a public-private allocation that is calculated exclusively based on the number of Title I students, while allowing public schools to use those funds to benefit *all* students. That interpretation is not only not required by the text of CARES Act, it is actually inconsistent with the Act, because private schools would not receive "equitable services," as required directly by § 18005(a), nor would such a distribution be "in the same manner as" Section 1117, which heavily emphasizes that services to public and private school students should be equivalent, 20 U.S.C. § 6320(3)(A).

Plaintiff's arguments ultimately boil down to a single flawed textual theory: that the phrase "in the same manner" is equivalent to "in the same proportion." That cannot be the correct interpretation. If that's what Congress intended, it could have said so directly, *using the exact same language it used just two sections earlier to establish the allocations among States and among local school districts within a State. See* CARES Act § 18003(b) ("in the same proportion as"); *id*. § 18003(c) ("in proportion to"); *id*. § 18002(b) ("on the basis of"). By equating "in the same manner" with "in the same proportion," Plaintiff's interpretation violates the different-words-have-different-meanings canon of statutory construction. *See* Scalia & Garner, *supra* at 170; *Loughrin*, 573 U.S. at 357; *McCarthy*, 322 F.3d at 656.

This Court should deny Plaintiff's preliminary injunction motion on this basis alone.

## II.     The Same Harm and Public Interest Arguments Raised by Plaintiff Cut Equally in the Opposite Direction When Private Schools Are Considered

In the harm and public interest sections of its preliminary injunction brief, Plaintiff paints

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR
Page 10

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

a one-sided picture of the Rule's effect on public schools, while completely ignoring the concomitant effect on private schools if this Court were to grant its injunction. Dkt. 8:19–24. This case involves a fixed pot of funds and the allocation of that money between public and private schools, so all of Plaintiff's arguments about harm and the public interest cut in the opposite direction with the exact same force with respect to private schools. Thus, none of these factors cut in favor of a preliminary injunction.

Private schools have been hit equally hard by the COVID-19 pandemic. Like public schools, private schools also need assistance "to purchase protective equipment, acquire remote learning technology, and pay staff to handle other exigencies that have arisen during the pandemic" Dkt. 8:22; *see* Sarah D. Sparks, *Catholic School Closures Rise Amid COVID-19, Recession*, Ed Week (June 9, 2020)[3] (noting the unexpected costs of "cleaning and supplies"). Like public schools, private schools also face many other "extraordinary needs" due to the crisis. Dkt. 8:22. If the Court grants Plaintiff's requested injunction, private schools (like those represented by the Amici) will suffer the same "irreparable harm" to their schools and the students they serve that Plaintiff alleges will occur without an injunction: they will lose out on CARES Act funds that Congress intended should go to them, *supra* Part I.

In fact, the situation is in many ways worse for private schools than for public schools, because private schools do not have the guaranteed tax funding that public schools do. As a result, unlike public schools, many private schools have already been forced to close due to the crisis. The Cato Institute has been tracking private school closures since March and has so far documented 107 permanent school closures as a result of the crisis, schools that collectively served over 16,000 students. *See COVID-19 Permanent Private School Closures*, Cato Institute, https://www.cato.org/covid-19-permanent-private-closures (last checked August 4, 2020).

Moreover, if the students that attended these schools transfer to public schools, it could impose significant additional costs on public school systems and state and local governments, further undercutting Plaintiff's argument that providing equitable relief to private schools harms the public school system. Cato estimates, for example, that if all of the over 16,000 students served

---

[3] https://www.edweek.org/ew/articles/2020/06/09/catholic-school-closures-rise-in-wake-of.html

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR
Page 11

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

by the already closed private schools switched to public school, it would cost taxpayers roughly $252 million to educate those additional children. And that's just counting the schools that have already closed. EdChoice estimated that if just 10% of private-school students were to migrate back into the public system, state and local budgets throughout the U.S. would need to come up with an additional $6.7 *billion*. *See* Robert C. Enlow, *The K-12 Financial Cliff: What States Could Face if Students Switch Schooling Sectors*, EdChoice (Apr. 20, 2020).[4]

Plaintiff's suggestion that private schools are less in need of relief because they have access to other funding sources under the CARES Act (namely the Paycheck Protection Program), Dkt. 8:16, is a red herring. There are also other CARES Act funds that public schools have access to that private schools do not. The "Coronavirus Relief Fund," for example (CARES Act § 5001), appropriates $150 billion for States and local governments and is available to cover "expenses to facilitate distance learning, including technological improvements, in connection with school closings to enable compliance with COVID-19 precautions." *See* Coronavirus Relief Fund: Guidance for State, Territorial, Local, and Tribal Governments, United States Department of the Treasury (Updated June 30, 2020).[5] And, of course, as already noted, public schools have access to funding through taxes, unlike private schools.

To give just one example, Washington public schools received annual funding of over $17 *billion* in the 2019-20 school year. *See K-12 School District Finance Date*, Washington State.[6] And Washington public schools now receive more funding on a per pupil basis than most private schools. *See* Liv Finne, *School funding in the 2019 legislative session; Washington state public schools now receive more money than most private schools*, Washington Policy Center (July 2019).[7] If all districts in Washington were to use the enrollment-based option, private schools in Washington would receive roughly $5 million more in CARES Act funding than if Plaintiff's lawsuit prevails. Dkt. 10:11. The $5 million difference, while a mere fraction of funding for

---

[4] https://www.edchoice.org/engage/the-k-12-financial-cliff-what-states-could-face-if-students-switch-schooling-sectors/
[5] https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Guidance-for-State-Territorial-Local-and-Tribal-Governments.pdf
[6] http://fiscal.wa.gov/WSFCurrent.xlsm (linked to from http://fiscal.wa.gov/k12.aspx)
[7] https://www.washingtonpolicy.org/library/doclib/Finne-School-funding-in-the-2019-legislative-session-Washington-state-public-schools-now-receive-more-money-than-most-private-schools.pdf

Amicus Brief of Private School Associations and          Freedom Foundation
Advocacy Groups in Support of Defendants                 P.O. Box 552
Case No. 2:20-cv-1119-BJR                                Olympia, WA, 98507
Page 12                                                  Phone: (360) 956-3482

Washington's public schools, could be significant in the ability of private schools in Washington to maintain viability and to provide the safe learning environment expected. So too for other States.

Plaintiff also argues that the public interest or balancing portion of the preliminary injunction test cuts "strongly" in favor of an injunction, Dkt. 8:23—as though private schools do not serve the same societal interest in educating the next generation. Plaintiff may believe that public schools are the best model for education and that private schools are a less desirable education system, but many parents, teachers, researchers, policy-makers, and, yes, legislators, disagree. And the legislative decision is obviously what matters. Congress has already weighed the competing claims of public and private schools and decided that funds for relief to schools impacted by COVID-19 should be distributed "equitably" between public and private schools. The Department's rule does that, whereas Plaintiff seeks an inequitable distribution that would favor public schools to the detriment of students in private schools. The Court should reject Plaintiff's flawed reading and deny their injunction motion.

## III. Private Schools Are an Integral Part of Education Across the Country

"Private education has played and is playing a significant and valuable role in raising national levels of knowledge, competence, and experience." *Bd. of Educ. v. Allen*, 392 U.S. 236, 247 (1968). Roughly 5.7 million students, 10% of all U.S. students, attend a private school in the United States. *See Private School Statistics at a Glance*, CAPE, https://www.capenet.org/ facts.html (last checked July 23, 2020). The nearly 35,000 private schools provide safe, high quality educational options for families who are seeking a different educational environment for their child. While private schools are sometimes unfairly stereotyped as havens for the wealthy, in reality, many private schools serve economically disadvantaged areas and families of modest means. According to the National Center for Education Statistics, over 20% of private school students nationally come from poor and near-poor families. *See Fast Facts: Public and Private School Comparison*, National Center for Education Statistics.[8] For generations, private schools have provided communities with options for their children's education, emphasizing not only academic success, but overall character and spiritual development. There has been a resurgence of

---

[8] https://nces.ed.gov/fastfacts/display.asp?id=55

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR
Page 13

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482

1   private school education over the last thirty years as States pass tax credits, tax deductions,

2   scholarships, and voucher programs that help low-income families access private schools.

3          Private schools are more than just a place where students go to learn. They create a

4   community that serves the entire family and, in most cases, the surrounding neighborhood. The

5   COVID-19 pandemic emphasized these schools' roles in the community. In Milwaukee,

6   Wisconsin, for example, a local private school provided thousands of free meals each week to any

7   child who needed access to food, regardless of what school they attended. *See* Libby Sobic &

8   Jessica Holmberg, *In This Together: How private and public charter schools are serving their*

9   *families and communities during the COVID-19 crisis*, WILL (Mar 27, 2020).[9]

10         One of the primary advantages of private schools is that parents can choose the educational

11  environment that is best suited to their child's unique needs. Families from all income brackets

12  seek out private schools for this very reason. And academic research has proven that for many

13  families, the private school option leads to invaluable long-term benefits for their children. In

14  Wisconsin, academic studies have found that private schools are safer on average than traditional

15  public schools. *See School Safety Report*, School Choice Wisconsin (2014).[10] Students attending

16  these schools receive an education that leads to increased rates of high-school graduation, college

17  acceptance, and college graduation. J. Cowen, et al., *Student Attainment and the Milwaukee*

18  *Parental Choice Program: Final Follow-up Analysis*, School Choice Demonstration Project (Feb.

19  2012)[11]; P. Wolf, *Do Voucher Students Attain Higher Levels of Education? Extended Evidence*

20  *from the Milwaukee Parental Choice Program*, Urban Institute (Feb. 2018).[12] Similar randomized

21  controlled trial evaluations have been done across the country, and all but two found significant

22  positive or no differences on student academic achievement, compared to their public school peers.

23  *See* A. Egalite & P. Wolf, *A Review of Empirical Research on School Choice,* 91 Peabody Journal

---

[9] https://medium.com/@willlawandliberty/in-this-together-5362a18ef01
[10] http://schoolchoicewi.org/wp-content/uploads/2017/02/SCW-SafetyReport-2014-update.pdf
[11] http://www.uadreform.org/downloads/2012/02/report-30-student-attainment-and-the-milwaukee-parental-choice-program-final-follow-up-analysis.pdf
[12] https://www.urban.org/sites/default/files/publication/96721/do_voucher_students_attain_higher_levels_of_education.pdf

Amicus Brief of Private School Associations and                    Freedom Foundation
Advocacy Groups in Support of Defendants                           P.O. Box 552
Case No. 2:20-cv-1119-BJR                                          Olympia, WA, 98507
Page 14                                                            Phone: (360) 956-3482

1    of Education 441 (2016).[13] Studies have also found that school choice helps build student

2    character, reducing involvement in criminal activity and incidences of paternity suits. *See* C.

3    DeAngelis & P. Wolf, *Private School Choice and Character: More Evidence from Milwaukee*,

4    EDRE Working Paper 2019-03 (2019), *available on* SSRN.[14] All of these benefits come at a lower

5    cost to taxpayers per student. *See* P. Wolf & M. McShane, *Is the Juice Worth the Squeeze? A*

6    *Benefit/Cost Analysis of the District of Columbia Opportunity Scholarship Program*, 8 Education

7    Finance and Policy 74 (2013).[15]

8           Congress historically has, and continues to, recognize the importance of private schools as

9    a vital part of the education sector. The pandemic significantly impacted *all* K-12 schools and the

10   CARES Act was intended to help schools, both public and private, continue to serve students. The

11   Department's rule is a continuation of that intent and commitment to ensuring that all families can

12   access the school of their choice, and is a correct and appropriate implementation of the underlying

13   requirements of the CARES Act.

14                                        **CONCLUSION**

15          For these reasons, Amici urge this Court to reject Plaintiff's invitation to enjoin the

16   Department's sensible and equitable rule and instead impose an inequitable distribution that would

17   favor public schools to the detriment of private schools and their students.

18          Dated: August 6, 2020

---

[13] https://www.tandfonline.com/doi/citedby/10.1080/0161956X.2016.1207436
[14] https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3335162
[15] https://www.mitpressjournals.org/doi/10.1162/EDFP_a_00083

Amicus Brief of Private School Associations and                    Freedom Foundation
Advocacy Groups in Support of Defendants                          P.O. Box 552
Case No. 2:20-cv-1119-BJR                                         Olympia, WA, 98507
Page 15                                                           Phone: (360) 956-3482

1    *Respectfully Submitted,*

2    /s/ Eric R. Stahlfeld
     ───────────────────────────
     ERIC R. STAHLFELD (Wash. Bar #22002)
3    FREEDOM FOUNDATION
     P.O. Box 552
4    Olympia, WA 98507
     Phone: (360) 956-3482
5    Fax: (360) 352-1874
     EStahlfeld@freedomfoundation.com
6
     /s/ Luke N. Berg
7    ───────────────────────────
     WISCONSIN INSTITUTE FOR LAW & LIBERTY
8    RICK ESENBERG (Wis. Bar #1005622)
     *LUKE N. BERG (Wis. Bar #1095644)
9    ELISABETH SOBIC (Wis. Bar #1103379)
     330 E. Kilbourn Ave., Suite 725
10   Milwaukee, WI 53202
     Telephone: (414) 727-9455
11   luke@will-law.org

12   *Attorneys for* Council for American Private Education, National Catholic
     Educational Association, Agudath Israel of America, Council of Islamic
13   Schools in North America, Association of Christian Schools International,
     Association of Christian Teachers and Schools, WELS Commission on
14   Lutheran Schools, Washington Catholic Conference, Washington
     Federation of Independent Schools, American Federation for Children,
15   Catholic Education Partners, Washington Policy Center, California
     Catholic Conference, Colorado Catholic Conference, Colorado
16   Association of Private Schools, Indiana Non-Public Education
     Association, Michigan Catholic Conference, Michigan Association of
17   Non-Public Schools, Midsouth Association of Independent Schools,
     Catholic Conference of Oklahoma, Pennsylvania Affiliate of the Council
18   for American Private Education, Texas Private Schools Association,
     Wisconsin Council of Religious & Independent Schools, School Choice
19   Wisconsin Action, California Policy Center, James Madison Institute,
     Great Lakes Education Foundation, Mississippi Center for Public Policy,
20   Nevada Policy Research Institute, Rio Grande Foundation, Roughrider
     Policy Center, Commonwealth Foundation, School Choice Wisconsin
21
22
23   *Additional Signatures on the Following Page*
24
25
26

     ─────────────────────
     * Pro Hac Vice
     Application pending.

Amicus Brief of Private School Associations and                    Freedom Foundation
Advocacy Groups in Support of Defendants                            P.O. Box 552
Case No. 2:20-cv-1119-BJR                                           Olympia, WA, 98507
                                                                    Phone: (360) 956-3482

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

/s/ Leslie Davis Hiner
LESLIE DAVIS HINER* (Ind. Bar No. 8465-49)
EDCHOICE, INC.
111 Monument Circle Suite 2650
Indianapolis, IN 46204
(317) 681-0745
leslie@edchoice.org
*Attorneys for EdChoice*

/s/ Patrick J. Wright
PATRICK J. WRIGHT* (MI Bar No. P54052)
MACKINAC CENTER FOR PUBLIC POLICY
140 West Main Street
Midland, MI 48640
(989) 631-0900
wright@mackinac.org
*Attorneys for Mackinac Center for Public
Policy*

/s/ Timothy Sandefur
TIMOTHY SANDEFUR* (Cal. Bar No. 224436)
SCHARF-NORTON CENTER FOR
CONSTITUTIONAL LITIGATION AT THE
GOLDWATER INSTITUTE
500 E. Coronado Rd.
Phoenix, AZ 85004
(602) 462-5000
litigation@goldwaterinstitute.org
*Attorneys for the Goldwater Institute*

/s/ Kim Wadas Vercauteren
KIM WADAS VERCAUTEREN*
(Wis. Bar No. 1045323)
WISCONSIN CATHOLIC CONFERENCE
131 W. Wilson Street, Suite 1105
Madison, WI 53703
(608) 257-0004
kim@wisconsincatholic.org
*Attorneys for Wisconsin Catholic Conference*

/s/ Daniel R. Suhr
DANIEL R. SUHR* (Wis. Bar No. 1056658)
LIBERTY JUSTICE CENTER
190 S. LaSalle St. Suite 1500
Chicago, IL 60603
(312) 263-7668
dsuhr@libertyjusticecenter.org
*Attorneys for Liberty Justice Center*

/s/ Jay R. Carson
JAY R. CARSON* (Ohio Bar No. 0068526)
THE BUCKEYE INSTITUTE
88 East Broad Street, Suite 1300
Columbus, Ohio 43215
(614) 224-4422
J.Carson@BuckeyeInstitute.org
*Attorneys for the Buckeye Institute*

---

* Not formally appearing. Above-signed counsel is authorized to appear as counsel of record for noticing/ECF purposes.

Amicus Brief of Private School Associations and
Advocacy Groups in Support of Defendants
Case No. 2:20-cv-1119-BJR

Freedom Foundation
P.O. Box 552
Olympia, WA, 98507
Phone: (360) 956-3482